ANDERSON *v.* GENERAL MOTORS CORP.

WORKMEN'S COMPENSATION—LIFTING GUN BARRELS—PERSONAL IN-
JURY.

Plaintiff who experienced severe pains in his leg while assisting
in lifting stock for third 106-pound gun barrel to machine
and recurrence of such pains in back and leg several weeks
later while engaged in lifting some heavy jigs which resulted
in his disablement suffered a personal injury "arising out of
and in course of his employment" as the term is used in the
workmen's compensation act (2 Comp. Laws 1929, § 8417, as
amended by Act No. 245, Pub. Acts 1943).

BUTZEL, C. J., and BOYLES, J., dissenting.

Appeal from Department of Labor and Industry.
Submitted January 11, 1946. (Docket No. 69, Cal-
endar No. 43,168.) Decided March 4, 1946. Rehear-
ing denied May 13, 1946.

George O. Anderson presented his claim for com-
pensation against General Motors Corporation,
Oldsmobile Division, for injuries sustained while in
its employ. Award to plaintiff. Defendant appeals.
Affirmed.

*Raymond H. Rapaport,* for plaintiff.

*Henry M. Hogan (Philip McCallum, G. W. Glos-
ter, E. H. Reynolds* and *R. V. Hackett,* of counsel),
for defendant.

BUSHNELL, J.   When plaintiff George O. Anderson entered the employ of defendant General Motors Corporation on April 11, 1935, he was given a physical examination and found to be strong and well.

His work on November 1, 1943, consisted of cutting stock from 20-millimeter gun barrels over 6 feet in length and weighing about 106 pounds. This operation required that the barrels be lifted to a machine by two men, one at each end. After he had thus handled two barrels, while lifting the third, he experienced severe pains in his left leg. He was sent to defendant's first aid station, where he was given tablets with instructions to take two of them every two hours. Although he requested permission to go home because of the severe pain, he was told to remain on the job until quitting time. He was under a doctor's care until March 22d, when he returned to lighter work, on which he continued for approximately three weeks, until the lifting of some jigs weighing several hundred pounds caused a recurrence of the pains in his back and leg. Further treatment was prescribed and he was sent to Dr. W. O. Badgley, a bone specialist, who pronounced his condition as probably a ruptured nucleous polyposis. Anderson returned to work again on May 18th, and on July 10th, again experiencing pains, was unable to continue further.

At the hearing before the deputy commissioner, Anderson admitted having had pain in his back prior to November 1, 1943, but he insisted that the one he experienced at that time was different from any former pain. There is very little disagreement between the medical experts as to Anderson's condition. Dr. Badgley testified for plaintiff and, after describing Anderson's symptoms and medical his-

tory, characterized his condition as "a ruptured disk, ruptured nucleous polyposis," which he said was much the same as "ruptured intervertebrae." He attributed Anderson's present condition to the lifting.

Dr. A. S. Isaacson, who testified for the defendant, also examined Anderson. In relating the history of the case as he understood it, Dr. Isaacson referred to a diagnosis by a local physician, of "sciatic neuritis," and stated that Anderson could not remember any direct correlation between any fall and the pain in his back. The pathology of the case was explained from the examination of X-ray pictures, but Dr. Isaacson was unable to definitely conclude that Anderson was suffering from a ruptured nucleous polyposis. He did say, however, that there was a causal connection between the disability and the employment in that "heavy lifting and such, do create an exacerbation of his difficulty." Dr. Isaacson, in reply to a hypothetical question, agreed that the lifting was a contributing factor, and that there was "a causal connection between this one lift, after which time he was unable to work, and his present disability." He concluded his testimony with the observation that the "disability could be due to a series of things, which manifested themselves on November 1st," stating "this final one being just the straw that broke the camel's back."

The opinion of the department on review, after reciting the facts and medical testimony, disposed of defendant's contention that an accidental injury must be established, as follows:

"Defendant has appealed and in its brief contends that the claimant had to establish the fact of

an accidental injury if he was to be held to have sustained a personal injury within the meaning of section 1 of part 2 of the compensation act as amended July 30, 1943; also, that since the claimant did not even claim an accidental injury his case must be predicated upon the theory of an occupational disease and it was, therefore, incumbent upon him to show that his disability was due to causes and conditions which are peculiar to and characteristic of the business of the employer; finally, that the claimant failed to give sufficient notice of the claimed personal injury within the period of time required by the act.

"We have heretofore held in a number of opinions that since July 30, 1943, being the effective date of Act No. 245, Pub. Acts 1943, which amended the compensation act, it is not necessary for a claimant to have sustained an accidental injury in order to become entitled to receive compensation on account of a personal injury arising out of and in the course of his employment. Without elaborating upon all of the reasons for our conclusion we believe it sufficient in this case to say that if it was the intention of the legislature to compensate for a personal injury due to a single event only if such event was caused by an accidental occurrence, then the word 'accident' undoubtedly would have been used in section 1 of part 2 of said act rather than the term 'single event.'

"As to whether plaintiff's disablement during the periods covered by the award of Deputy Commissioner Silas J. McGregor is related to his personal injury of November 1, 1943, the record leaves no doubt but what this question must be answered in the affirmative and we so find.

"The claimant's disablement occurred while he was engaged at obviously strenuous work and in the absence of some rebuttal testimony, and the record

contains none, we do not believe that there can be any doubt but that the defendant had ample notice within the statutory period of the fact of the claimant having received a personal injury arising out of and in the course of his employment and we so find."

Defendant was granted leave to appeal from the order entered in the light of the quoted opinion, and contends that there is no—"competent evidence to support the finding of the department of labor and industry that the plaintiff and appellee sustained a personal injury arising out of and in the course of his employment within the meaning of the workmen's compensation law."

Plaintiff argues that under the provisions of the workmen's compensation act (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.] [2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*)]), as amended by Act No. 245, Pub. Acts 1943,* injuries need not be accidental in order to be compensable, and he insists that competent evidence was presented to support the department's finding that his disability was due to his personal injury of November 1, 1943.

The issues thus presented are the same as those presented in *Hagopian* v. *City of Highland Park, ante,* 608, decided herewith, except that the constitutional question raised in the *Hagopian Case* is not presented in the instant case.

We do not repeat the reasoning of the *Hagopian Case,* although it is controlling as to the instant case. We do, however, direct attention to the report of the committee which studied the proposed changes in the workmen's compensation act and its recommen-

---

* See Comp. Laws Supp. 1945, § 8408 *et seq.,* Stat. Ann. 1944 Cum. Supp. § 17.142 *et seq.*—REPORTER.

dations as reported to the 1943 session of the legislature. This committee was appointed as a result of Resolution No. 78, adopted by the 1941 legislature. See 2 House Journal (1941), 1779. This report is found in House Journal (1943), pp. 318 *et seq.,* under the heading of "Definitions of Injuries: And Computation of Benefits." At page 320 the committee reported in part:

"One change in this part of the proposed act abolishes the schedule of 31 occupational diseases contained in the 1937 amendment to the present law, and also abolishes the requirement that injuries be accidental."

Two members of the committee filed a supplemental report (see House Journal, p. 335 *et seq.*), which stated:

"But we do insist that there should not be deleted from the present law, as the other two voting members propose, the fact that all other personal injuries must be accidental. Otherwise it is evident to any reasonable-minded person that grave injustice will be worked against an employer and force up insurance rates.

"In other words, it is our suggestion that section 1 of part 2 of the present act, or sections 1 and 2 of part 2 of the proposed bill, should be changed to read:

" 'SECTION 1. If an employee receives an accidental personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, he shall be paid compensation benefits in the manner and to the extent hereinafter provided, or, in case of his death resulting from such injury,

compensation benefits shall be paid to his dependents as hereinafter defined.'"

The conclusion is inescapable that the legislature had squarely before it the question of whether or not the then requirements of the act as to accidental injury should be retained or abolished, and that it deliberately arrived at the decision to abolish such requirements. That this was the intent of the legislature is indicated in a chart submitted by plaintiff, which quotes portions of six sections of the act before the 1943 amendment, and the same portions thereafter in each of which the words "accidental" or "accident" have been deleted and the word "injury" substituted therefor.

During the two and one-half years since this amendment of the act, we apprehend that the department of labor and industry has been construing the law to mean that an injury to be compensable does not now have to be accidental in nature. Although we have no information in the record before us as to the number of claims so determined, we are able to conclude from the paucity of applications for writs of certiorari involving this point that the department's interpretation has been generally accepted by the profession. We feel sure that such interpretation eliminates the seeming need for doubtful testimony as to slipping, falling, et cetera, which is replete in cases prior to the amendment.

As stated in the *Hagopian Case,* ever since *Adams v. Acme White Lead & Color Works,* 182 Mich. 157 (L. R. A. 1916 A, 283, 6 N. C. C. A. 482, Ann. Cas. 1916 D, 689), consideration of the term "personal injury" in the light of the language of the act and its title required the conclusion that personal in-

juries were limited to accidental injuries, as distinguished from occupational diseases. In the *Adams Case* this court refused to follow the holdings of the Massachusetts court in *William Hurle's Case,* 217 Mass. 223 (104 N. E. 336, L. R. A. 1916 A, 279, Ann. Cas. 1915 C, 919), and *Otto F. Johnson's Case,* 217 Mass. 388 (104 N. E. 735), because, as stated therein (p. 169):

"As 'accident' is the controlling word in our act, we do not think that the Massachusetts decision should be held to apply here, as the construction of that act has little, if any, bearing on the Michigan act.

"Our attention has been called to the Massachusetts act, which differs in many respects from our act. That act is entitled:

" 'An act relative to payments to employees for personal injuries received in the course of their employment, and to the prevention of such injuries.'

"The whole scope of the act seems to be to provide for compensation for personal injuries in the course of employment. In many instances where the word 'accident' occurs in our statute the word 'injury' is used in the Massachusetts statutes."

But, as stated in the *Hagopian Case,* the Michigan act now embodies the same language which is used in the Massachusetts act, viz., "personal injury arising out of and in the course of his employment." 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1945 Cum. Supp. § 17.151).

This being our conclusion, and there being competent evidence to support the department's finding of fact that plaintiff's disability was due to his per-

sonal injury on November 1, 1943, the award is affirmed, with costs to appellee.

REID and STARR, JJ., concurred with BUSHNELL, J.

NORTH, J. (*concurring in affirmance*). Decision in the instant case is not controlled by Justice BUTZEL's opinion in *Hagopian* v. *City of Highland Park, ante,* 608, for the following reasons. In the instant case Anderson's personal injury clearly arose out of and in the course of his employment. His injury was not at all in the nature of an ordinary disease "of life to which the public is generally exposed outside of the employment," which would render such an injury noncompensable. Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–1, Stat. Ann. 1945 Cum. Supp. § 17.220). But on the contrary Hagopian's affliction was a disease of the heart with which he was afflicted both prior to and subsequent to the alleged personal injury. His disease did not arise out of his employment. And, further, Hagopian's affliction was an ordinary disease "of life to which the public is generally exposed." It was not a disease or disability which is due to causes and conditions which are "characteristic of and peculiar to the business" or work in which he was engaged. Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8485–1, Stat. Ann. 1945 Cum. Supp. § 17.220).

If, as provided in the act: "Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable" (Act No. 10, pt. 7, § 1, Pub. Acts 1912 (1st Ex. Sess.), as

added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943 [Comp. Laws Supp. 1945, § 8485-1, Stat. Ann. 1945 Cum. Supp. § 17.220]), then it follows that aggravation of such "ordinary diseases," in the absence of a fortuitous happening which is an approximate cause of the aggravation, is not compensable. Such was the holding in Chief Justice BUTZEL's opinion in the *Hagopian Case, supra.*

I concur in affirming the award.

CARR and SHARPE, JJ., concurred with NORTH, J.

BOYLES, J. (*dissenting*). I think the award in this case should be set aside for the reasons stated by Mr. Chief Justice BUTZEL in his opinion in *Hagopian* v. *City of Highland Park, ante,* 608, 618, this day handed down.

BUTZEL, C. J., concurred with BOYLES, J.