POINDEXTER *v.* DEPARTMENT OF CONSERVATION.

1. WORKMEN'S COMPENSATION—SUPREME COURT—EXAMINATION OF TESTIMONY.

The testimony taken at a hearing before the department of labor and industry or its deputy commissioner may be examined by the Supreme Court for the purpose of determining whether there is any competent evidence to support the award made (2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943).

2. EVIDENCE—COMMON KNOWLEDGE—HEART DISEASE.

It is a matter of common knowledge that heart disease causes more mortality than any other affliction, and that coronary thrombosis or occlusion is one of its most frequent forms.

3. WORKMEN'S COMPENSATION—ORDINARY DISEASES OF LIFE—CORONARY THROMBOSIS.

Employee of State conservation department and in charge of its water resources branch of the geology division who, as part of his duties, had testified as an expert in court proceedings some 17 times within two years preceding time he appeared in court for similar purpose and who was ill when he took the witness stand is *held*, to have died from an ordinary disease of life, where there was nothing accidental, fortuitous or even unusual in what occurred at the session in the courtroom immediately preceding time when he was afflicted with coronary thrombosis.

4. SAME—HEALTH—LIFE INSURANCE.

The workmen's compensation act is neither a health nor life insurance plan.

5. SAME—EXPERT WITNESSES—DEATH FROM HEART DISEASE.

Dependents of hydraulic geologist who succumbed from heart disease immediately after testifying as an expert, the performance of which work he was employed to do, *held*, not entitled to workmen's compensation where there does not appear

to have been either trauma, fortuitous event, or even anything of a dangerous or grave nature in the work in which he was then engaged, as he was suffering from an ordinary disease of life to which the public in general is exposed (Act No. 10, pt. 7, § 1, Pub. Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub. Acts 1937, and amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted October 9, 1946. (Docket No. 24, Calendar No. 43,383.) Decided December 2, 1946.

Helen M., Edward H., and James F. Poindexter, as dependents, presented their claim for compensation against Michigan Department of Conservation, employer, and State Accident Fund, insurer, for death of Oscar F. Poindexter. Award to plaintiffs. Defendants appeal. Reversed.

*Rathbun, Arvidson & Thomas,* for plaintiffs.

*Harry F. Briggs* (*Roy Andrus,* of counsel), for defendants.

Butzel, C. J. For 18 years prior to December 3, 1944, the date of his death, Oscar F. Poindexter was employed by the Michigan department of conservation, defendant in proceedings to recover workmen's compensation, brought by decedent's dependent widow and children. Defendant has brought an appeal in the nature of certiorari from an award in favor of plaintiffs. At the time of his death, decedent was in charge of the water resources branch of the geology division of defendant. He frequently made physical examinations, tabulations and meas-

urements of water levels and occasionally testified in court proceedings concerning that subject on which he was an expert. In 1943 he appeared only twice in such proceedings, but in 1944, he made 13 appearances. Attendance at them was accepted by him as one of the duties incident to his work, and defendant compensated him for the time so. spent.

Prior to November 29, 1944, decedent's general health appeared to be fair. He suffered from a catarrhal condition and dyspepsia but had lost no time on that account. He was examined by his physician in February and March of 1944, without any observation of heart disease symptoms.

Proceedings had been instituted in the circuit court for the county of Eaton by the board of supervisors of that county and the Michigan department of conservation to establish the water level of Narrow lake. Decedent was thoroughly familiar with the problem. He had measured the water level at various intervals, prepared a hydrographic chart and acquainted himself with the topographic features of the lake area. On November 29, 1944, he appeared in the circuit court, Charlotte, Michigan, to give testimony regarding these matters. His entire testimony is contained in 11 pages of the printed record. He was on the stand approximately 40 minutes. He was questioned on direct examination by the prosecuting attorney for Eaton county and had answered but four simple questions on cross-examination when the court took the usual noon recess. He remained in the court room a brief time and then proceeded to the corridor where, with two of his colleagues, he descended the stairs, crossed the lobby and was just about to step down from the first step to the street level outside the court house when he said he was sick. His com-

panions noted that he was pallid and that beads of perspiration appeared on his hands. He was taken into the register of deeds' office where he was placed on a cot. A physician was summoned and administered something to ease his pain. Later in the day he was taken to his home in Lansing, Michigan, and his family physician was called. Upon the latter's orders, he was moved to a hospital and placed under an oxygen tent. He died on December 3, 1944. His illness was diagnosed as coronary thrombosis or coronary occlusion, and was so certified by his doctor on the death certificate.

A hearing on the application for compensation was held before a deputy commissioner who, as indicated by the record, made no separate findings of fact as to the alleged disability or injury except to state in the award that decedent on November 29, 1944, received a personal injury arising out of and in the course of his employment. Appellant claims that this is a conclusion, not a finding of fact; that the department's only real finding on review was that the deputy commissioner was in the best position to evaluate the conflicting testimony relative to the effect that decedent's court appearance had upon him. Appellant contends that under such circumstances and in accordance with *Goines* v. *Kelsey Hayes Wheel Co.*, 294 Mich. 156, we may examine the testimony to determine whether there is any competent evidence to support the award. We may do this at all times when the claim is made that there is no competent evidence to support the award.*

Decedent was a capable and conscientious man well qualified for his work by scholastic training, ability and long years of experience. He was of an

---

* See 2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8451, Stat. Ann. 1946 Cum. Supp. § 17.186).—REPORTER.

intense and nervous temperament and regarded his work seriously. He was a busy man and had returned just the preceding evening from a mission to Benton Harbor on State business. He stopped at Narrow lake the morning of the day on which he testified. He knew his subject matter and was well fortified with charts and maps. Although he was appearing in court much more frequently in 1944 than in the previous year, there was nothing unusual or overstrenuous in this assignment. He was acting in the regular and normal course of his duties. There was nothing accidental, fortuitous or even unusual in what occurred in the court room. It was claimed that he was under a mental strain while testifying. This is not uncommon with expert or other witnesses. In its opinion the department cites two questions asked of the decedent which it is claimed contributed to his discomfiture. To one of them his answer was: "I would not be prepared to testify on that;" to the other he answered: "I couldn't say about that." Such answers are a poor index of mental strain.

There is no question but that decedent was ill when he took the witness stand. His hands shook when he rested them on the stenographer's table while testifying from charts and maps. Moreover, in the expert testimony on behalf of plaintiff, it is admitted that coronary thrombosis or occlusion is preceded by untoward conditions. Plaintiffs' experts were not in full accord. Some said the disease began with arteriosclerosis. It was stated that when this condition has reached a certain stage of development, the thrombosis or occlusion occurs. A large percentage of persons afflicted with the disease have died in their sleep. One of the medical experts for plaintiffs stated that this type of heart seizure occurs frequently after some excitement, that merely

listening to a broadcast of a ball game had been known to induce a coronary occlusion. It is a matter of common knowledge that heart disease causes more mortality than any other affliction, and that coronary thrombosis or occlusion is one of its most frequent forms.

Plaintiffs rely on *LaVeck* v. *Parke Davis & Co.*, 190 Mich. 604 (L. R. A. 1916 D, 1277), where the employee suffered a cerebral hemorrhage and subsequent partial paralysis as the result of working long hours in an exceedingly hot laboratory. There something unusual and fortuitous was shown. In *Monk* v. *Charcoal Iron Company of America*, 246 Mich. 193, also relied upon by plaintiffs, the employee succumbed to a heart seizure brought on by excitement and overexertion resulting from his attempts to pull the fire from under a boiler after a steam pipe had been broken. Then again in *Schroetke* v. *Jackson-Church Co.*, 193 Mich. 616 (L. R. A. 1917 D, 64), the employee was affected by overexertion and excitement attendant on an accidental fire, and this Court held that this was something fortuitous and unexpected. There was nothing of that nature in the instant case. Decedent died from an ordinary disease of life. As we have often stated, the compensation act is neither a health nor life insurance plan. Plaintiffs try to distinguish the instant case from the very recent one of *Hagopian* v. *City of Highland Park*, 313 Mich. 608, on the ground that in the latter case plaintiff knew he had a heart condition when he attempted to perform his regular work. The instant case in which no physical strain was shown is far stronger for the rule stated in the *Hagopian Case*. Decedent was doing exactly what he was employed to do. There was no trauma or fortuitous event, nor anything even of a dangerous or grave nature. He was suffering from

an ordinary disease of life to which the public is generally exposed * when he suddenly succumbed. We need not repeat what we stated so recently in *Hagopian* v. *City of Highland Park, supra.*
The award is vacated, with costs to defendant.

CARR, BUSHNELL, SHARPE, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.