SAMELS *v.* GOODYEAR TIRE & RUBBER CO.

WORKMEN'S COMPENSATION—TIRE BUILDERS—EPICONDYLITIS—OC-
CUPATIONAL DISEASE—PERSONAL INJURY.

> Award of workmen's compensation to plaintiff who suffered
> epicondylitis after seven months of work for defendant as tire
> builder is affirmed as an occupational disease by BUTZEL,
> BOYLES, and REID, JJ., and as a personal injury arising out
> of and in the course of employment by BUSHNELL, NORTH,
> and DETHMERS, JJ.   (Act No. 10, pt. 2, § 1, pt. 7, § 3, Pub.
> Acts 1912 [1st Ex. Sess.], as last amended by Act No. 245,
> Pub. Acts 1943).

CARR, C. J., and SHARPE, J., dissenting.

Appeal from Department of Labor and Industry. Submitted October 9, 1946. (Docket No. 21, Calendar No. 43,439.) Decided April 8, 1947. Rehearing denied May 16, 1947.

John D. Samels presented his claim against Goodyear Tire & Rubber Company, employer, and Hartford Accident & Indemnity Company, insurer, for compensation for injuries sustained while in its employ. Award to plaintiff. Defendants appeal. Affirmed.

*H. H. Warner* (*Raymond H. Rappaport,* of counsel), for plaintiff.

*Mitts & Smith,* for defendants.

REID, J.   Defendants, on leave granted, took an appeal in the nature of certiorari from an award of

the department of labor and industry in which it was determined that plaintiff is entitled to $21 per week from January 29 to February 26, 1945, and from October 5, 1945 to January 18, 1946, and until further order of the commission, based on the department's finding that plaintiff's average weekly wage at the time of the injury was in excess of $75, that his wage loss due to injury based upon his then present weekly earnings of $50 at common labor is $25, and that plaintiff was entitled to total disability compensation since he was totally disabled from doing the work he was doing at the time of the injury. The real question involved is whether the nature of plaintiff's injury was such as to entitle him to compensation.

Plaintiff went to work for the defendant company as a truck tire builder some seven months prior to the time of his alleged injury. In performing his work the tire builder first affixes a corded base by hand, stretching it taut as it winds on the rotating drum. This is followed in succession by three corded rubber bands, the bead, and finally the green rubber. The bands are then driven by force onto the drum and lined up by pounding them down with a wooden mallet. The rubber is then heeled down by a downward pressure with the palms of the hands and is forced over the bead with a pulling motion. Excess rubber is trimmed off by exerting pressure on the rotating tire with a curved knife and the tire is finally removed from the drum by removing the sections of the drum from the interior, these individual sections weighing between 50 and 60 pounds. The job also required plaintiff to lift tires weighing approximately 105 pounds. The entire process involves intense physical exertion of primarily the muscles of the arms. The department of labor and industry found as a matter of fact that this was skilled labor.

Plaintiff testified that the tire building operation cannot be described by words and has to be seen to be understood; that the operation first produced extreme numbness in his hands, and caused stiffness in his finger joints; this gradually worked out and the condition later reappeared in his elbows; the elbow condition failed to disappear as he assumed it would, and became severe, with a tendency to swell up. Plaintiff further testified this condition did not prevent him from using his arms in the ordinary sense, but he could not do his particular work without extreme pain; that the condition became so painful that on January 27, 1945, he reported to the nurse at defendants' hospital, and that he left work on that day. He also reported to Dr. Don Kudner, one of defendants' physicians, who diagnosed the condition as epicondylitis and who told plaintiff to do only very light work for a while.

Dr. Kudner testified he first examined plaintiff on January 29, 1945, and that:

"*A.* He was suffering from a pain in the region of the elbow joint, with a marked tenderness over the external epicondyle.  *  *  *

"*Q.* What is epicondylitis?

"*A.* Inflammation of the epicondyle. There are a bunch of muscles attached to the bone at that site and it becomes inflamed and tender from over-use of that set of muscles, from strain of that set of muscles.

"*Q.* Will any over-use of any kind—use of muscles cause an epicondylitis?

"*A.* Yes.  *  *  *

"*Q.* If it gets into a chronic stage they form a bursa at the point of the inflammation?

"*A.* Yes.

"*Q.* Can that condition exist in anybody, in any type of work or play that requires an exertion of the muscles?

"*A.* Yes, the old name was tennis elbow, because it occurred in tennis players.

"*Q.* Occur in baseball players?

"*A.* Sometimes.   *   *   *

"*Q.* Does this occur to everybody, or peculiar to some people?

"*A.* Peculiar to some people.

"*Q.* Are there people that can do the same exertion without developing this condition?·

"*A.* Yes, many of them.

"*Q.* With reference to the place where Mr. Samels works, are there people employed in this department who have never developed this condition in any form?

"*A.* Yes, only a very few of the entire number of tire builders develop it, of course.   *   *   *   It is a fairly common complaint among industrial workers."

Plaintiff at one place in his testimony summarizes the development of the condition in his elbows by saying that it "was the culmination of seven months of strain" and he nowhere describes any one particular event or strain which precipitated the condition or made it markedly worse.

The department found "that the plaintiff sustained a personal injury on January 27, 1945, not attributable to a single event but to repeated events and strain which brought about an unexpected result; that the injury arose out of and· in the course of his employment."

The department based its ruling on part 2, § 1, of the workmen's compensation act, 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943, effective July 30, 1943 (Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1946 Cum. Supp. § 17.151):

"Sec. 1. An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such

injury subject to the provisions of this act, shall be paid compensation in the manner and to the extent hereinafter provided, or in case of his death resulting from such injuries such compensation shall be paid to his dependents as hereinafter defined. The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case, of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death."

Plaintiff in his claim states,

"1. That this claim relates to a personal injury which occurred on or about .......... OR To a disablement from occupational disease which occurred on or about January 27, 1945.
* * *

"3. Nature of disability—A severe pain and stiffness in elbows. The bone seems to be sore and extremely sensitive to slightest touch. Date of recovery—Condition remains. Date of return to work—First of March."

The defendant employer's basic report of industrial injury states, "Describe nature and location of injury or disease—Epicondylitis left elbow."

The testimony plainly indicates that it is the occupational disease, epicondylitis, which is the cause of the disablement. The report of the defendant employer admits that fact. The department awarded for a personal injury under part 2, but quoted with apparent approval the testimony of two doctors, witnesses for defendants, who testified that the disablement was due to epicondylitis. Can the award be left to stand as though made under part 7, § 1 (Comp. Laws Supp. 1945, § 8485-1, Stat. Ann. 1946 Cum. Supp. § 17.220).

Defendants state in their brief:

"If we are correct in our conclusion that the tribunal erred in finding a 'personal injury' within section 1, part 2, of the workmen's compensation act, we still concede that their findings could be upheld if sustained by section 1, part 7, of the act, *supra*. The issue, therefore, becomes material on this appeal even though it was not decided below."

See *Kasarewski* v. *Hupp Motor Car Corp.*, 315 Mich. 225, 228.

So far as pertinent to this case, part 7, § 1, of the act now reads as follows:

"SEC. 1. Whenever used in this act:

(a) The word 'disability' means the state of being disabled from earning full wages at the work in which the employee was last subjected to the conditions resulting in disability;

(b) The word 'disablement' means the event of becoming so disabled as defined in subparagraph (a);

(c) The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

The applicable part of part 7, § 3, of the act (Comp. Laws Supp. 1945, § 8485–3, Stat. Ann. 1946 Cum. Supp. § 17.222) is as follows:

"SEC. 3. If an employee is disabled or dies and his disability or death is caused by a disease and the disease is due to the nature of the employment in which such employee was engaged and was contracted therein, he or his dependents shall be entitled to compensation for his death or for his disablement."

It is of importance to consider whether epicondylitis is an ordinary disease of life and therefore noncompensable under part 7, § 1, subd. (c). Few of the persons who are subjected to severe and repeated strains of the muscles at the elbow ever develop epicondylitis. Certain activities as for example, tennis and baseball playing, sometimes cause the disease in some individuals. We conclude that the great majority of persons are not engaged in activities such as could cause the disease, and among those who are engaged in such activities as could cause epicondylitis, only a few develop the disease. So far as the record shows in this case, epicondylitis is not an ordinary disease of life to which the public is generally exposed outside of the employment, and is not within the prohibition of part 7, § 1, subd. (c).

The department among other things found, "that the injury arose out of and in the course of his employment." In view of its quotation, with approval, of the doctors' testimony that plaintiff's disablement was due to epicondylitis, the department must be considered as having found the disablement due to epicondylitis. The department did not in so many words find that plaintiff's disease is due to causes and conditions which are characteristic of and peculiar to the employer's business, tire building, but the finding of the department that plaintiff's employment required skilled labor necessarily implies that the kind of work is peculiar to the employer's business. The uncontradicted testimony shows that the process of tire building causes terrific strains on the elbows and is a process characteristic of and peculiar to tire production. It is to be noted that the language of part 7, § 1, subd. (c), of the act is that the causes and conditions (not the disease) must be characteristic of and peculiar to the business of the employer.

We note *Le Lenko* v. *Wilson II. Lee Co.*, 128 Conn. 499 (24 Atl. [2d] 253), in which the Connecticut court states, p. 502,

"Our compensation act provides that the words 'personal injury' or 'injury' as used in it are to be construed to include occupational disease defined as follows: 'a disease peculiar to the occupation in which the employee was engaged and due to causes in excess of the ordinary hazards of employment as such.' General Statutes, § 5223."

It will be noted that the Connecticut statute speaks of occupational disease as a disease that is peculiar to the occupation and due to causes in excess of the ordinary hazards of employment, whereas our Michigan statute recites that it is the causes and conditions which are required to be characteristic of and peculiar to the business of the employer. Having the distinction in mind, we further note the following from *Glodenis* v. *American Brass Co.*, 118 Conn. 29, 40 (170 Atl. 146, 150), quoted with approval in the *Le Lenko Case, supra:*

"The phrase, 'peculiar to the occupation,' is not here used in the sense that the disease must be one which originates *exclusively* from the particular kind of employment in which the employee is engaged, but rather in the sense that the conditions of that employment must result in a hazard which distinguishes it in character from the general run of occupations." (Italics supplied.)

Further on in the *Le Lenko* opinion the court states,

"Occupational diseases result ordinarily in incapacity in a relatively small proportion of the number of employees subjected to the risk; indeed, if this were not so, economic considerations would require an abandonment of the employment or a change in its conditions to obviate the risk."

After discussing the meaning of the word "natural" as used in some of that court's former decisions, the court further states,

"If, so traced, a disease is the natural result of conditions which are inherent in the employment and which attach to that employment a risk of incurring it in excess of that attending employment in general, an award of compensation is not precluded because the risk is one which has not become generally recognized or because *only employees unusually susceptible* will suffer from the disease." (Italics supplied.)

Defendants claim unusual susceptibility of plaintiff Samels. Such defense is of no avail. Mere susceptibility is nowhere mentioned in the Michigan act as a matter defeating compensability. Samels was a well man when he entered the employment, with nothing to indicate any susceptibility to epicondylitis, and his susceptibility became apparent only after several months of subjection to terrific strain in the employment.

While the Connecticut statute, as above noted, differs substantially from the Michigan statute, yet the construction put by the Connecticut court on the word "peculiar" is of value to us in determining what meaning to attach to the words in the Michigan statute, part 7, § 1, subd. (c), "characteristic of and peculiar to the business of the employer."

The testimony in this case is all to the effect that the terrific strain over several months of work is the cause of the epicondylitis, that the strain does distinguish the character of the work from the general run of occupations and that the strain is characteristic of and peculiar to the business of the employer in this case.

Defendants claim that an erroneous computation of plaintiff's average weekly earnings was adopted

by the department in the award. The ground for this claim advanced by defendants is that records were introduced which show weekly wage earnings which would not average $75 per week. Plaintiff claims that a Mr. Climer, who "designated" certain records, is not shown to have had knowledge of the subject on which he was speaking (apparently not as a witness and not under oath) and that there was no testimony that the records introduced were records of all of plaintiff's wage earnings. The employer's basic report filed with the commission states, "straight time earnings: hourly rate—$1.28. Hours per week—56. Total—$65." Plaintiff claims that it is undisputed that he worked seven days per week and that he received double time for Sundays. It can be said for defendants' theory in this regard that there was a conflict in the testimony. We do not disturb the finding by the commission in that particular; there was sufficient testimony to support it.

In view of the statement heretofore quoted from the defendants' brief, the findings of the department, the uncontradicted testimony in the case and the language in part 7, § 3, of the act, the award is affirmed, as though made under part 7 of the act. Costs to plaintiff.

BUTZEL, J., concurred with REID, J.

BOYLES, J. (*concurring*). I concur in the opinion of Mr. Justice REID, except in stating that the award of compensation was made under part 2 of the act. I think the opinion of the commission indicates that the award of compensation was made under part 7, § 3, of the act, (Comp. Laws Supp. 1945, § 8485-3, Stat. Ann. 1946 Cum. Supp. § 17.222) for epicondylitis, which under the circumstances of this case is

an occupational disease.  As stated by Mr. Justice
REID, there is testimony to support such a finding.
If the commission had not so found, it would be
necessary to reverse the award and remand for a
finding of fact on that question.

In its opinion the commission refers to part 2, § 1,
of the act, not for the purpose of finding that epicon-
dylitis is compensable under part 2, but to fix the
time, January 29, 1945, when compensation should
begin.  It quotes:

"The term 'time of injury' or 'date of injury' as
used in this act shall in the case of a disease or in
the case of an injury not attributable to a single
event be the last day of work in the employment in
which the employee was last subjected to the condi-
tions resulting in disability or death."

The opinion of the commission recites at length
the conditions under which plaintiff worked, plainly
showing that under the circumstances plaintiff's dis-
ability was "due to causes and conditions which are
characteristic of and peculiar to the business of the
employer and which arises out of and in the course
of the employment" (part 7, § 1, subd. [c], of the
act [Comp. Laws Supp. 1945, § 8485–1, Stat. Ann.
1946 Cum. Supp. § 17.220]).  The commission found:

"We have made a careful review of this record.
It is our opinion and we find that the plaintiff sus-
tained a personal injury on January 27, 1945, not
attributable to a single event but to repeated events
and strain which brought about an unexpected re-
sult; that the injury arose out of and in the course
of his employment."

When considered with the rest of the opinion, this
is a sufficient finding that plaintiff was awarded
compensation under part 7 of the act, section 2

(Comp. Laws Supp. 1945, § 8485–2, Stat. Ann. 1946 Cum. Supp. § 17.221) of which declares:

"The disablement of an employee resulting from such disease or disability shall be treated as the happening of a personal injury within the meaning of this act."

The commission has found that plaintiff is entitled to compensation under part 7, § 3, of the act for an occupational disease which plainly was "due to the nature of the employment in which such employee was engaged and was contracted therein," according to the language of said section 3. There is testimony to support the finding. For those reasons, I concur in affirming the award.

NORTH, J. After careful consideration of the department's opinion I am unable to agree with the conclusion of either Justice REID or Justice BOYLES that the department's award should have been or was granted under the provisions of part 7 of the workmen's compensation act (Comp. Laws Supp. 1940, 1945, § 8485–1 et seq., Stat. Ann. 1946 Cum. Supp. § 17.220 et seq.). Nowhere in the department's opinion is there a reference to part 7 of the act, nor is "occupational disease" mentioned in the department's opinion. In the only case cited by the department in support of its opinion (Anderson v. General Motors Corp., 313 Mich. 630) compensation was awarded under part 2 of the workmen's compensation act for a "personal injury of November 1, 1943" suffered by Anderson incident to his lifting a heavy piece of metal. Further, in the instant case the department said:

"Plaintiff filed an application for hearing and adjustment of claim for compensation July 9, 1945, *alleging a personal injury arising out of and in the course of his employment.* * * * On Janu-

ary 19th an award was entered (by the deputy) finding *plaintiff sustained a personal injury arising out of and in the course of his employment."*

The award of the deputy was affirmed by the department, with only an inconsequential modification as to dates. Further in its opinion the department said:

"It is our opinion and we find that the plaintiff sustained a personal injury on January 27, 1945, not attributable to a single event but to repeated events and strain which brought about an unexpected result; that the injury arose out of and in the course of his employment. Section 1, part 2 of the workmen's compensation act, as amended in 1943,* provides as follows:

" 'An employee, who receives a personal injury arising out of and in the course of his employment by an employer who is at the time of such injury subject to the provisions of this act, shall be paid compensation.' * * *

"See the opinion of the Supreme Court in the case of *Anderson* v. *General Motors Corporation (supra)."*

In view of the foregoing, as noted above, I am unable to agree that the department based its decision in the instant case on the provisions of part 7 of the workmen's compensation act; but on the contrary it seems clear that the compensation was awarded under part 2 of the act.

While I concur in affirming the award made to plaintiff, I am of the opinion that our decision should be on the same ground as that of the department which as above indicated was that plaintiff sustained a personal injury arising out of and in the course of his employment and in consequence thereof he was entitled to and received compensation under

---

* Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1946 Cum. Supp. § 17.151.—Reporter.

part 2 of the workmen's compensation act, as amended in 1943. Such holding is in accordance with our decision in *Anderson* v. *General Motors Corporation, supra.*

Bushnell, and Dethmers, JJ., concurred with North, J.

Sharpe, J. (*dissenting*). I am not in accord with the opinion of Mr. Justice Reid for reasons hereinafter stated.

The department of labor and industry awarded plaintiff compensation under the provisions of part 2, §.1 of the workmen's compensation act, 2 Comp. Laws 1929, § 8417, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1946 Cum. Supp. § 17.151). It is conceded that there was no intervening fortuitous event or accident causing plaintiff's disablement.

In *O'Neil* v. *W. R. Spencer Grocer Co.,* 316 Mich. 320, deceased was a grocery salesman. The claim was made that he had suffered a personal injury and that the fortuitous event was the effort occasioned by the hazard of driving his car while roads were covered with a mantle of snow. We there held that the exertion of driving his car on streets after a heavy fall of snow was an experience common to all motorists in the city of Jackson on that particular day; and that the driving of a car under such circumstances was not a fortuitous event. We said, "The record substantiates the claim that deceased's death was due to a disease of life to which the public in general is exposed." We approved the following from *Hagopian* v. *City of Highland Park,* 313 Mich. 608, 619, 621, 625:

"We have frequently held that under the compensation act, prior to the adoption of the occupational

disease amendment, one performing the ordinary work for which he is hired cannot recover unless there is an accident or a fortuitous event causing the disability.    *    *    *

"The amended act itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event.    *    *    *

"It properly was restricted to accidents and occupational diseases."

In the case at bar, there being no fortuitous event, compensation may not be granted under part 2 of the act.

Plaintiff's application for hearing and adjustment of claim reads as follows:

"The applicant respectfully shows:

"1.    That this claim relates to a personal injury which occurred on or about ———— OR To a disablement from occupational disease which occurred on or about January 27th 1945."

The cause was tried upon the theory that plaintiff had suffered a personal injury. The award of the department is based on part 2, § 1, of the workmen's compensation act.

Mr. Justice Reid affirms the award as though it had been made under part 7 of the workmen's compensation act (Comp. Laws Supp. 1940, 1945, § 8485-1 *et seq.,* Stat. Ann. 1946 Cum. Supp. § 17.220 *et seq.*) without a finding of fact by the department on that question. The application filed by plaintiff is broad enough for the department to make such a finding of fact.

The award should be reversed and the cause remanded to the department to determine whether or not plaintiff is entitled to an award under part 7 of the act. Costs to await results.

Carr, C. J., concurred with Sharpe, J.