CROFF v. LAKEY FOUNDRY & MACHINE COMPANY.

WORKMEN'S COMPENSATION—NONACCIDENTAL INJURY—EQUALLY DIVIDED COURT.

An award of compensation to core setter whose disability was found to have been due to lifting a 150-pound box in February, 1946, in the course of his employment but without having been accompanied by an accident or fortuitous event, is affirmed by an equally divided court (2 Comp. Laws 1929, § 8407 et seq., as amended by Act No. 245, Pub. Acts 1943).

Appeal from Department of Labor and Industry. Submitted October 8, 1947. (Docket No. 23, Calendar No. 43,802.) Decided April 5, 1948.

Ernest Croff presented his claim for compensation against Lakey Foundry & Machine Company for injuries sustained while in its employ. Award to plaintiff. Defendant appeals. Affirmed by an equally divided court.

*Hinds & Sikkenga,* for plaintiff.

*Joseph T. Riley,* for defendant.

DETHMERS, J. *(for affirmance).* Defendant appeals from the department of labor and industry's award granting compensation to plaintiff, under part 2 of the workmen's compensation act,* for disability re-

---

* 2 Comp. Laws 1929, § 8407 et seq., as amended by Act No. 245, Pub. Acts 1943, and as last amended by Act No. 325, Pub. Acts 1945 (Comp. Laws Supp. 1940, 1945, § 8408 et seq., Stat. Ann. and Stat. Ann. 1945 Cum. Supp. § 17.141 et seq.).

sulting from a personal injury which arose out of and in the course of his employment without the happening of an accident or fortuitous event.

Employed by defendant as a core setter for over two years immediately preceding his injury, plaintiff was accustomed to setting from 90 to 125 jacket cores, weighing around 80 or 90 pounds, and lifting possibly two boxes of Hubbard cores, weighing close to 150 pounds, per day. On February 5, 1946, he engaged in the usual amount of lifting. At about 1:30 p.m. he lifted a box of Hubbard cores from a line approximately two feet above the floor, swung it around to one side and set it down upon the floor. As he did so, he felt a click and a sharp pain in his back, the pain shooting down through his lower left hip. He continued work until his usual quitting time at 3:30 p.m., but has been unable to work since then. About a year before plaintiff had felt a little kink in his back while working, and previously had complained about the work being too heavy and hurting his back, but never prior to February 5th had he felt the same pain in his back experienced that day.

A doctor, called as defendant's witness, testified that X-ray pictures of plaintiff's back, taken eight months after the injury, disclose a destructive lesion involving the fifth lumbar vertebra, and that the most probable diagnosis as to cause thereof is infection, with a possibility of cancer or malignancy of the vertebra; that the period of time during which this destructive process had been going on could not be determined (thus failing to indicate whether it ante-dated the injury of February 5th or not); that when such destructive process exists in a vertebra, heavy lifting could cause the vertebra to quash down or crumble and give the appearance which he testified was presented by the X-ray pic-

tures. Accordingly, defendant urges that plaintiff's disability results from a pre-existing diseased condition aggravated by a nonfortuitous happening and that it is, therefore, under the holding of this Court in *Hagopian* v. *City of Highland Park,* 313 Mich. 608, noncompensable.

Plaintiff's doctor, on the contrary, testified that X-ray pictures disclose a compression fracture of the spine; that this could result from weight lifting, particularly while the body was being turned to one side; that, based upon his examination of the pictures and of plaintiff and his knowledge of the history of the case, it was his opinion that plaintiff's injury and resulting disability were due to plaintiff's lifting the 150-pound box and swinging it to one side as he was setting it down.

The department found that plaintiff's disability did not arise from an aggravation of a pre-existing condition, but stemmed directly from lifting the 150-pound box on February 5th. In this it is supported by the testimony of plaintiff's doctor. We do not disturb the department's findings of fact which are supported by competent evidence.*

In consequence, there remains for consideration the question of whether a disability resulting from a personal injury which arose out of and in the course of employment, after the effective date of Act No. 245, Pub. Acts 1943, is compensable under part 2 of the workmen's compensation act when such injury was not occasioned by an accident or fortuitous event.

This question was duly considered and answered in the affirmative in an opinion written by Mr. Justice BUSHNELL in *Anderson* v. *General Motors Corp.,*

---

* See 2 Comp. Laws 1929, § 8451, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8451, Stat. Ann. 1947 Cum. Supp. § 17.186).—REPORTER.

313 Mich. 630, signed by three members of this Court and approved by the three additional members who signed the concurring opinion of Mr. Justice NORTH, in which concurrence was predicated on no different grounds than an affirmative answer to this question.

Subsequently, the continued adherence of a majority of this Court to the majority view in the *Anderson Case* has been brought into question in *Kasarewski* v. *Hupp Motor Car Corp.,* 315 Mich. 225, and in *Samels* v. *Goodyear Tire & Rubber Co.,* 317 Mich. 149. The instant case affords an opportunity for clarification.

Defendant quotes language from Mr. Justice BUTZEL's opinion in *Hagopian* v. *City of Highland Park, supra,* indicating that it was therein held that the 1943 amendment did not remove the element of accident or fortuitous event as a prerequisite to the right to recover for a disability resulting from personal injury. It should be noted that this opinion was signed by but four members of this Court, with a fifth concurring in the result. Furthermore, the precise question before the Court in that case must be borne in mind. It was found, as a matter of fact, that plaintiff's claim was based on the aggravation of a pre-existing disease. The majority holding is well epitomized in Justice BUTZEL's opinion as follows:

"The amended act itself was not intended to cover aggravation of pre-existing disease without an accident or fortuitous event."

The opinion concludes by quoting from the 1943 amendment the following:

" 'Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable.' "

The observation follows that, with the inclusion of this language, it can hardly be said that the 1943 amendment broadens the act to allow an award in a case of aggravation of a pre-existing disease without an accident or fortuitous event. That the *Hagopian Case* decides no more than this is clearly stated, by three of the five justices who composed its majority, in the concurring opinion written by Mr. Justice NORTH in the *Anderson Case.*

But the decision in the *Hagopian Case* has no application, as explained in Justice NORTH's concurring opinion in the *Anderson Case,* in instances involving a disability which is due solely to a nonaccidental or nonfortuitous personal injury arising out of and in the course of employment, as in the instant case.

Mr. Justice BUSHNELL's opinion in the *Hagopian Case* directs attention to the number of instances in which the words "accident" and "accidental" were eliminated from the act by the 1943 amendment and the term "injury" substituted for the terms "accident" and "accidental injury." His opinion in the *Anderson Case* points out that this was not done inadvertently or merely for the purpose of substituting a term which would have equal application to accidental injury and occupational disease, but rather that the legislature acted in response to a specific committee recommendation to abolish the requirement that an injury must be accidental to make a resultant disability compensable. For these and other reasons advanced in these two opinions, which need not be repeated here, I am persuaded that it was the legislative intent, in enacting the 1943 amendment, that disabilities resulting from personal injuries (as distinguished from disabilities resulting from the aggravation of pre-existing disease or condition) which arise out of and in the course of employment should thereafter be compensable, even

though not occasioned by accident or fortuitous event.

The award of the department granting plaintiff compensation, therefore, is affirmed, with costs to plaintiff.

Bushnell, C. J., and Reid and North, JJ., concurred with Dethmers, J.

Butzel, J. *(for reversal).* Part 2, § 1, of Act No. 10, Pub. Acts 1912 (1st Ex. Sess.), the original enactment of the workmen's compensation act, read as follows so far as material to this case:

"If an employee * * * receives a personal injury arising out of and in the course of his employment, * * * he shall be paid compensation." 2 Comp. Laws 1929, § 8417 (Stat. Ann. § 17.151).

This provision has been amended only once (by Act No. 245, Pub. Acts 1943) and it now reads as follows:

"An employee, who receives a personal injury arising out of and in the course of his employment, * * * shall be paid compensation." Comp. Laws Supp. 1945, § 8417, Stat. Ann. 1947 Cum. Supp. § 17.151.

It is obvious that no substantial change has been made in this provision during the 35 years the workmen's compensation act has been in effect in this State. This section contains the key to the whole act, being the one which gives the employee a right to be paid compensation, and it is the ultimate basis of all cases decided under the act.

From the outset this Court has held that the above quoted provision does not authorize the payment of compensation for all personal injuries suffered by an employee, but for accidental injuries only.

*Adams* v. *Acme White Lead & Color Works,* 182 Mich. 157 (L. R. A. 1916 A, 283, 6 N. C. C. A. 482, Ann. Cas. 1916 D, 689), in which we held that this was dictated by the fact that the title of the act was significant in describing it as one to provide "compensation for the accidental injury to or death of employees." Thus, under the original act, only accidental personal injuries arising out of and in the course of employment were compensable. Occupational diseases and other disabilities caused by the employment were not compensable.

Compensation for occupational diseases was provided for by the so-called "occupational disease amendment," Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485–1 *et seq.,* Stat. Ann. 1947 Cum. Supp. § 17.220 *et seq.*). This amendment contained a schedule of specific diseases for which compensation was to be payable if the disease was contracted in the manner therein specified. For example, silicosis was made compensable when it was caused by mining, and pneumoconiosis was made compensable when it was caused by quarrying, cutting, crushing, grinding or polishing of metal. It was held in *Sutter* v. *Kalamazoo Stove & Furnace Co.,* 297 Mich. 226, that a molder in a foundry who contracted silicosis and pneumoconiosis was not entitled to compensation because he was not engaged in mining or in quarrying, cutting, crushing, grinding, or polishing of metal.

The impossibility of providing a schedule of diseases broad enough to include all occupational diseases which should be compensable became apparent, and by Act No. 245, Pub. Acts 1943, the legislature struck the schedule from the act and substituted therefor a provision which furnishes general coverage of all occupational diseases and disabilities. This was accomplished by defining the term "per-

sonal injury" as follows in section 1 (c) of part 7 of the act:

"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arise out of and in the course of the employment." Comp. Laws Supp. 1945, § 8485–1; Stat. Ann. 1947 Cum. Supp. § 17.220.

The section immediately following (part 7, § 2) provides that the disablement of an employee resulting from such disease or disability shall be treated as the happening of a personal injury within the meaning of the act.

This is the only definition of the term ".personal injury" contained in the act. It is obviously not an all-inclusive definition. It merely states that the term "shall include" diseases or disabilities which are "due to causes and conditions which are characteristic of and peculiar to" the employer's business, and which arise out of and in the course of employment. This definition does not in any way affect the. meaning which had previously been attached to the term "personal injury" as used in part 2, § 1, of the act. It merely gives the term an additional meaning. Thus, to qualify for compensation benefits, a claimant must establish either that he has sustained an accidental injury arising out of and in the course of his employment, in which event he is claiming directly under part 2, § 1, or that he has an occupational disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arose out of and in the course of the employment, in which latter case he is claiming under part 7 of the act. Mr. Justice Dethmers' opinion would award compensation to a claimant who has not es-

tablished either of these propositions.  He has taken the position that by Act No. 245, Pub. Acts 1943, the legislature so changed the workmen's compensation act that it is no longer necessary that an injury be caused by an accident or fortuitous event for it to be compensable under part 2, § 1, of the act.  He states that he is persuaded such was the legislative intent.  A careful reading and analysis of the amendment does not leave me with the same impression.

Important changes were made in the act by the 1943 amendment in addition to the broadening of coverage as to occupational diseases already pointed out.  The form of the act was changed from that of an "elective" act to that of a "compulsory" act, the employer's and employee's right to "elect" to be bound by the act being taken away.  Also, the maximum and minimum amounts of benefits payable were generally increased, and the provision which requires the employer to furnish medical, surgical and hospital service to an injured employee was changed so as to require that such services be provided for a longer period than previously.  Several alterations were made in the procedural provisions of the act and in the provisions touching upon the administration of the act.  Numerous changes in phraseology were necessary to accomplish these modifications, but none of them affect the instant case.

My Brother points out that in a number of instances the words "accident" and "accidental" were eliminated from the act by the 1943 amendment and the term "injury" substituted therefor.  This indicates to him that the legislature intended to change the coverage of part 2 of the act to include nonaccidental as well as accidental personal injuries arising out of and in the course of the employment.  That is

not my interpretation of the change in phraseology. Such a change was made, for example, in part 1, § 10, which read as follows prior to 1943:

"Where any employer * * * contracts with any other person, * * * who is not subject to this act and who does not become subject to this act prior to the date of the *accidental* injury or death for which claim is made," et cetera, 2 Comp. Laws 1929, § 8416, Stat. Ann. § 17.150.

The italicized word "accidental" was stricken out by the amendment. It is my belief that this word was stricken out because of the amendments made to part 7 of the act previously discussed. In addition to the meaning which the term "personal injury" had been construed to have in connection with its use in part 2, § 1, of the act, the legislature assigned the additional meaning to it that it "shall include" diseases or disabilities due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arise out of and in the course of the employment. Such disabilities or diseases need not originate from an accidental cause. Thus, it was appropriate for the legislature to eliminate the word "accidental" in the above section, intending that the word "injury" as used therein should be given the same broad meaning as the term "personal injury."

Part 2, § 1, was amended by adding the following sentence to it:

"The term 'time of injury' or 'date of injury' as used in this act shall in the case of a disease or in the case of an injury not attributable to a single event be the last day of work in the employment in which the employee was last subjected to the conditions resulting in disability or death." Comp. Laws Supp. 1945, § 8417; Stat. Ann. 1947 Cum. Supp. § 17.151.

It is contended that if it was the intention of the legislature to compensate for a personal injury due to a single event only if such event was an accidental occurrence, then the word "accident" undoubtedly would have been used rather than the term "single event." Such reasoning does not appeal to me. An injury attributable to a "single event," *i. e.*, an accidental or fortuitous event, is clearly compensable under the construction which the court has heretofore placed upon the workmen's compensation act. There was no necessity for the legislature to add the quoted sentence to the act so far as compensation coverage for accidental injuries was concerned. The quoted sentence refers to the broadened meaning which has been assigned to the term "personal injury" in part 7 of the act, *i. e.*, to occupational diseases and disabilities due to causes and conditions which are characteristic of and peculiar to the employer's business. The quoted sentence from part 2, § 1, *supra,* means that the date of injury of an occupational disease or disability which is compensable under part 7 of the act shall be the last day of work in the employment in which the employee was last subjected to the conditions which resulted in disability or death. The use of the word "conditions" is significant. It refers, in my opinion, to conditions which are "characteristic of and peculiar to" the employer's business.

In sections 7, 11, 12 and 15 of part 2, the word "injury" was substituted for the words "accident" and "accidental" in several places. Thus, in section 7, the phraseology was changed from "Questions as to who constitute dependents * * * shall be determined as of the date of the *accident* to the employee" to "shall be determined as of the date of the *injury* to the employee." This does not indicate to me that the legislature intended to make nonacci-

dental personal injuries compensable under part 2 of the act. When the act is read as it stood before and after the 1943 amendment, it is evident that the legislature intended not only to make substantive changes, hereinbefore discussed, but also to revise and edit the act so that its provisions make up an integrated and complete whole. The act must be read and construed in its entirety, and each provision must be deemed to have a relationship to the others. Part 7 is incomplete unless the other parts of the act are read in conjunction with it, and, by changing the phraseology in the provisions cited, the legislature more firmly united part 7 to the rest of the act.

It is significant that where the legislature intended to make a substantial modification of the act, it expressed its intent by the use of specific and definite language. No provision can be pointed to where the legislature, by such language, expressed its intent to make the change advocated in the instant case.

The case of *Anderson* v. *General Motors Corp.,* 313 Mich. 630, is doubtful authority for the stand which Mr. Justice Dethmers has taken, especially when it is read in the light of *Hagopian* v. *City of Highland Park,* 313 Mich. 608, decided the same day. Subsequently, the issue was again presented to this Court in *Samels* v. *Goodyear Tire & Rubber Co.,* 317 Mich. 149, and, in my opinion, that case settled the law. We there affirmed an award of compensation to a claimant who suffered from epicondylitis, an inflamation of the muscles in the region of the elbow joint, attributable to seven months of strenuous work as a tire builder. Three justices based their affirmance of the award on the ground that the claimant was disabled by an occupational disease or disability which was compensable under part 7 of the

act.   Three justices concurred in affirmance on the ground that plaintiff had sustained a personal injury which was compensable under part 2 of the act. Two justices dissented from affirmance on the ground that there had been no finding of fact by the department of labor and industry that·claimant was entitled.to an award of compensation under part 7 of the act, and held that the cause should have been remanded to the department for·such a finding.   Consideration of this dissenting opinion with the opinions of the first three justices will show that a majority of the Court were agreed that, to be compensable under part 2 of the act, a personal injury must result from an accidental or fortuitous event arising out of and in the course of the employment.

It should be pointed out that the *Hagopian Case, supra,* has never been overruled, but, on the contrary, its rule has been followed. in *Riley* v. *Kohlenberg,* 316 Mich. 144, *Poindexter* v. *Department of Conservation,* 316 Mich. 235, *O'Neil* v. *W. R. Spencer Grocer Co.,* 316 Mich. 320,. and *Cromie* v. *Florez, Inc.,* 317 Mich. 516.   In the latter case, the entire Court concurred in denial of compensation on the ground that:

"Upon the record in this case, it cannot be said that the claimant has proved that deceased sustained an accidental injury arising out of and in the course of his employment."

In *Mooney* v. *Copper Range Railroad Co.,* 318 Mich. 120, we held that the aggravation of a preexisting diseased condition by accidental means was compensable.   Such decision does not conflict with the *Hagopian Case,* in which we held that aggravation of a pre-existing diseased condition by nonaccidental means is not compensable.   This decision was made directly in the face of the provision in part 7,

§ 1 (c) of the act that "ordinary diseases of life * * * shall not be compensable." (Comp. Laws Supp. 1945, § 8485–1; Stat. Ann. 1947 Cum. Supp. § 17.220.) There is no logical reason for holding that an ordinary disease of life is compensable under part 2 of the act when aggravated or accelerated by an accident or fortuitous event in the course of employment if we are to hold that a personal injury need not be accidental in origin to be compensable thereunder. The theory upon which compensation was awarded in the *Mooney Case* was that accidental personal injuries are compensable under part 2 of the act without regard to the provisions of part 7 of the act. If we hold that it is no longer necessary that a personal injury be of accidental origin to be compensable under part 2, then, logically, we must give the quoted clause in part 7, § 1 (c) an interpretation which will preclude recovery under all circumstances where the claimant is suffering from an ordinary disease of life.

The same reasoning applies to cases in which we have held that a pre-existing hernia which is aggravated by an accidental or fortuitous event in the course of employment is compensable under part 2 of the act even though the act provides in part 7, § 1 (c), that a hernia must be "clearly recent in origin and result from a strain" in order to be compensable. See *Kasarewski* v. *Hupp Motor Car Corp.*, 315 Mich. 225, in which this question is discussed.

If my Brother's interpretation of the workmen's compensation act is correct, then, in that respect, the act is plainly unconstitutional in that its title is not sufficiently broad to encompass such an interpretation. The title of the original act read as follows:

"An act * * * providing compensation for the accidental injury to or death of employees."

This title has been amended only once, by Act No. 61, Pub. Acts 1937, which act embraces the occupational disease amendment. It was absolutely necessary that the title be amended to make it broad enough to cover this amendment. This was done by adding the italicized words to the title as it existed before:

"An act   *   *   *   providing compensation for the *disability or death resulting from occupational injuries or disease or* accidental injury to or death of employees."

It is not claimed that the legislature intended to broaden the act, as now contended, when it thus amended the title in 1937. The purpose of the change in title was merely to make it broad enough to cover the occupational disease amendment. In my opinion, the change made was not sufficient to permit this Court to interpret the statute as advocated by my Brother.

It is quite significant that in 1947 bills were introduced in the State legislature to amend the act and the title to provide compensation for nonaccidental personal injuries arising out of and in the course of employment.* None of these bills were favorably acted upon by the legislature. It is not within the province of this Court to usurp the functions of the legislature and amend the act or its title by judicial interpretation in the absence of clear and express language which dictates such an interpretation.

In the instant case, the compensation commission of the department of labor and industry held that claimant is suffering from a destructive process of the spine, the cause of which is in question, and that the claimant is not afflicted with an ordinary disease

---

* See for example House Bill No. 235 and Senate Bill No. 251 introduced in the 1947 session of the legislature.

of life. They held that the disability stemmed directly from an incident when plaintiff lifted a 150-pound box of foundry cores and immediately felt a sharp pain in his back. They awarded compensation under part 2 of the act. According to plaintiff's testimony, he had had back trouble two years previously. Although he made light of it, he did go to the first-aid department, received some light treatments, and applied a liniment to his back which a doctor prescribed for him. He said that the pain wore off and that he lost no time from work, although he found himself getting tired at times. He decided the work was too heavy for him, and asked several times to be taken off the job and assigned to lighter work. This was never done. The commission did find that the claimant is disabled by an injury to his spine. It is not our function to determine whether or not the injury is attributable to the work he had been performing, i. e., whether the heavy lifting which claimant was required to do over a long period of time caused an occupational disability which is due to causes and conditions which are characteristic of and peculiar to the employer's business.

The award should be set aside, but the case should be remanded to the department of labor and industry to determine whether or not plaintiff suffered an occupational disability under part 7 of the act, and to make an award in accordance with its findings. No costs should be allowed on this appeal.

SHARPE, BOYLES, and CARR, JJ., concurred with BUTZEL, J.