HUBBLE v. KOLD-HOLD MANUFACTURING COMPANY.

WORKMEN'S COMPENSATION—BACK INJURY—EVIDENCE.
Finding of workmen's compensation commission that plaintiff, while taking inventory of electrical assembly parts, had not sustained an injury to his back arising out of and in the course of his employment *held*, sustained by testimony.

REFERENCES FOR POINTS IN HEADNOTES
58 Am. Jur., Workmen's Compensation Acts, §§ 209-241.

Appeal from Department of Labor and Industry. Submitted April 7, 1948. (Docket No. 29, Calendar No. 43,738.) Decided June 14, 1948.

Floyd C. Hubble presented his claim against Kold-Hold Manufacturing Company, employer, and Michigan Mutual Liability Company, insurer, for compensation for personal injuries sustained while in its employ. Award to defendants. Plaintiff appeals. Affirmed.

*Foster, Cummins, Snyder, Cameron & Foster,* for plaintiff.

*L. J. Carey* and *George J. Cooper,* for defendants.

Boyles, J. Plaintiff appeals from an order of the compensation commission denying him compensation under part 2* of the workmen's compensation act. He claims that he sustained a personal injury while working for the defendant company, and that it arose out of and in the course of his employment. The facts are readily obtainable from his testimony before the deputy commissioner.

In April, 1945, plaintiff went to work for the defendant company as a "trainee" on an electrical assembly, without previous experience. He claims he was injured about September 5 or 6, 1945. His work at the time was counting parts and making an inventory in the stock room. These parts were small articles, bolts, nuts, light fixtures, pipe fittings. He testified:

"*A.* I was attempting to pull a pan of fittings from under a bench, probably the height of that table, with my left hand on the bench and reaching

---

* Acts No. 10, pt. 2, Pub. Acts 1912 (1st Ex. Sess.), as amended (2 Comp. Laws 1929, § 8417 *et seq.* [Stat. Ann. § 17.151 *et seq.*]).— Reporter.

under to pull it out.  I didn't feel any particular pain as I pulled it, but after I pulled it out and attempted to straighten out it seemed as though my back was in a locked position. I could only straighten up gradually.   *   *   *

"*Q*. Did you have to strain or exert yourself to pull it out?

"*A*. It didn't seem as though it was any great exertion.

"*Q*. What did you do when you felt the pain in your back?

"*A*. It was very near to an office chair.  I sat down in that to straighten out, and it might have been as long as 15 minutes before I went back to work.  In the meantime the person I had been working with on this, but who had been called away, came back and from that time on why we were mostly working on lighter stuff."

He told no one in authority about it at the time. He testified that he told one Herbert Anderson who was working with him.  He called Mr. Anderson as a witness, who denied plaintiff's assertion.  Anderson testified:

"*Q*. And on one occasion when you were away and you came back, I told you I had hurt my back, do you recall that?

"*A*. No, I don't.

"*Q*. Do you recall being surprised when I didn't go ahead and do the amount of work I had previous to that?

"*A*.  No for the reason that before that you had complained of a sore back, and as the days went on it got worse and worse, and then when I was called upstairs for that new job, well after that I don't know what happened.

"*Q*. Then your impression is that from the start I had a sore back?

"*A*. That's right.

"*Q*. With that impression were you ever surprised at some of the work I had to do which was heavy?

"*A.* Well I don't think there was any of the work there that was absolutely injurious to a person's back."

Plaintiff also testified that he told his supervisors, Mr. Cole and Mr. Martineau, about having hurt his back. They were called by plaintiff as his witnesses, and each denied having ever been told by plaintiff of the injury he claims. Mr. Cole testified:

"*Q.* Do you have any remembrance, Roger, of me telling you I had a hurt back why I wanted to come back on electrical assembly?

"*A.* I don't recall that you asked me that at any time. I do have the knowledge that you had a weak back or had trouble with your back prior to, or might I say all during the time you worked for me."

Mr. Martineau testified:

"*The Commissioner:* Did you have any knowledge of the fact that he got a kink in his back after pulling a pan out, the first part of September, out from under a bench?

"*Mr. Martineau:* No, if it was reported, it was not to me.

"*The Commissioner:* Did you ever hear of it from any source, that he claimed that?

"*Mr. Martineau:* No."

At no time did he ask the defendant company for any treatment. About September 10th he went to a chiropractor for treatment. He further testified in regard to his claimed injury in September, that he did not jerk on the pan, gave it a steady pull, that he did not have to strain in doing that, that he felt pain only after he had pulled the pan out and straightened up. He admitted that he had hurt his back in 1944 by slipping on the ice, that he "had an awful sore back" for quite a while. On direct examination plaintiff testified:

"*Q.* Did you lose any time from work because of this injury?

"*A.* After the 28th of September I haven't worked.

"*Q.* Why?

"*A.* Disability due to a painful back.

"*Q.* You haven't worked since then?

"*A.* That's right."

On cross-examination plaintiff claimed he lost time from work "from the 2d to the 9th of September," "from the 9th to the 16th," and that from the 16th to the 23d he worked only two days. However, plaintiff's time cards which he himself punched on a mechanical clock were received in evidence. They showed that plaintiff worked five days during the week he claimed to have been injured. They also showed that he worked six days for the week of September 30th, contrary to his testimony that he did not work after September 28th on account of "disability due to a painful back." Plaintiff also admitted on cross-examination that on September 28th he was transferred from inventory of electrical assembly, that work having been completed. He testified:

"*Q.* And why were you being transferred?

"*A.* No more work in electrical assembly, and the inventory was completed.

"*Q.* That's right, so you didn't quit working on the inventory or electrical assembly because of your back, but you quit because the job folded up, is that right?

"*A.* That's right.

"*Q.* It was finished?

"*A.* That's right.

"*Q.* Now before the 23d of September did you work steadily?

"*A.* Fairly so.

"*Q.* Did you ever lose any time?

"*A.* Yes, sir.

"*Q.* Do you know how much time you lost?

"*A.* Average of $42.33 a week, so I must have lost quite a bit of time.

"*Q.* Why were you losing that time?

"*A.* Why, I was—it wasn't because I was disabled to work, Mr. Hutter.

"*Q.* Well, can you tell me why?

"*A.* In everyday language I imagine it was, you would say it was chasing around too much outside of work hours.

"*Q.* But it wasn't because of your back?

"*A.* No."

The plaintiff called a number of witnesses, to testify at the hearing before the deputy. Without exception, they failed to corroborate his testimony that he had received an injury, or told others that he had received an injury. There was considerable testimony that the plaintiff had trouble with his back before September 5th, while he was working for the defendant company and that he made no claim to anyone of having hurt his back by pulling a pan out from under a bench. Plaintiff himself admitted that he had a "sore back" when he started to work on the inventory.

The commission made the following finding:

"We find that plaintiff did not sustain a personal injury arising out of and in the course of his employment by the Kold-Hold Manufacturing Company on September 6, 1945 and is therefore not entitled to compensation benefits."

There is testimony in the record, as well as inferences properly drawn from all of the testimony, which amply support the above finding of the commission. The plaintiff, for reversal, relies solely on *Anderson* v. *General Motors Corp.,* 313 Mich. 630. But it should be pointed out that the finding and order of the commission denying compensation to the plaintiff was made January 24, 1947, nearly a year

after the opinion in the *Anderson Case* was handed down.

A reading of the record is convincing that the commission gave little, if any, credence to plaintiff's own testimony. There being testimony to support the finding of the commission, the order denying compensation is affirmed, with costs.

BUSHNELL, C. J., and SHARPE, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.