## SCHINDERLE *v.* FORD MOTOR CO.

1. WORKMEN'S COMPENSATION—SECOND CLAIM FOR COMPENSATION TREATED AS RENEWAL OF FORMER CLAIM.

   Plaintiff's second application for hearing and adjustment of claim for compensation is considered by Supreme Court as a renewal of former claim after necessity for hearing was found to exist.

2. SAME—CLAIM FOR COMPENSATION—TIME OF FILING.

   Filing of original claim for compensation was timely where employer had immediate notice of the injury occurring on November 25th and claim was filed on following January 10th (2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943).

3. SAME—SUFFICIENCY OF CLAIM FOR COMPENSATION.

   Claim for workmen's compensation which described injury suffered by plaintiff lumber handler and gave employer such further information as the statute intended and which was addressed to the compensation commission of the department

of labor and industry *held*, sufficient, such commission not being empowered to determine any other claim than one for compensation.

4. SAME—REPORT OF INJURY—WAIVER.

It is competent for an employer to waive any question as to the nature of an employee's injury in making a report of the injury under the workmen's compensation act.

5. SAME—NATURE OF INJURY—FINDING OF DEPARTMENT—MYOSITIS —ARTHRITIS.

Where plaintiff lumber handler's myositis did not exist before his injury, received while carrying a 16-foot length of 8″ lumber weighing about 130 pounds, and injury is attributable to a single event of slipping, award of compensation is treated as a finding that the injury was, as stated in defendant's report, myositis and not arthritis; notwithstanding it is common knowledge that a sudden jar or jerk may cause great pain to an arthritic person.

6. SAME—LUMBER HANDLER—QUESTIONS REVIEWABLE—CLAIM FOR COMPENSATION.

Whether or not defendant's report denying compensability of plaintiff lumber handler's injury precluded defendant from claiming benefit of statute of limitations as to plaintiff's second claim for compensation is not decided where record supports department's decision that first claim was timely filed and was alive when hearing before the department was in progress (2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943).

7. SAME—LOSS OF TIME—PROXIMATE CAUSE—EVIDENCE.

Evidence *held*, sufficient to sustain department's finding as to proximate cause of plaintiff's loss of time before termination of employment.

Appeal from Department of Labor and Industry. Submitted October 8, 1946. (Docket No. 11, Calendar No. 43,357.) Decided January 6, 1947.

Michael Schinderle presented his claim for compensation against Ford Motor Company for injuries sustained while in its employ. Award to plaintiff. Defendant appeals. Affirmed.

*James C. Perino,* for plaintiff.

*Paul Rahm,* for defendant.

REID, J. Upon leave granted, defendant took an appeal in the nature of certiorari from an award of compensation by the department of labor and industry. Plaintiff entered the employment of defendant September 30, 1943, as a lumber piler. On November 25, 1943, plaintiff and a fellow employee were handling six-quarter green lumber, 16 feet long 8 inches wide. Each board weighed about 130 pounds. Plaintiff's fellow employee was handing the boards from the tram to plaintiff. Plaintiff would take each board and then walk over and pile it on a car. The happening of the injury complained of is described by plaintiff in his testimony as follows:

"*Q.* While your partner was handing you the lumber and you were transferring it to the car * * * what happened?

"*A.* My partner was handing me one of those heavy boards and I put my both hands on the board and had the board against my body and when I took a step forward to put it on the car I slipped with my right leg and got an awful wrench in my back.

"*Q.* Your right leg?

"*A.* My right foot—I slipped with my right foot and got an awful wrench in my back.

"*Q.* Did anyone see what happened?

"*A.* Then when I got that awful wrench in my back I left the board drop in front of me and put my both hands behind my back and braced myself from that awful pain I got."

Plaintiff further testified that his fellow employee told him to report to the boss right away and plaintiff further says that on the same day he went to his foreman, Mr. Mainville, who wrote out a first-aid card and told plaintiff to report to the first aid; fur-

ther, that he reported to the first-aid department and told them that as he was handling some heavy lumber he slipped with his right foot and got an awful wrench in his back, and that the factory service took him to the hospital where he saw Dr. Menzies. Further, that he was told by the doctor that he could not do heavy work, that either he should get a light job or go home, whereupon plaintiff again reported to Mr. Mainville, who said that he had no light work for him and sent him to another person, apparently a foreman in the employ of defendant, who gave him light work, which employment continued for several days. After some further interviews with a foreman at the plant and with Dr. Menzies, finally his foreman directed him to report to Margaret Erickson, who was in charge of defendant's local office for compensation matters. Finally upon being told by Dr. Menzies on December 2, 1943, that he could not give him any more treatments, plaintiff says he stayed in bed on and off and worked as much as he could and that defendant gave him light work. About December 16th, he again saw Mrs. Erickson and, after being told by her, "I suppose you have to pay for your own doctor," he said to Mrs. Erickson, "Then I am asking the Ford Motor Company to pay my compensation right away because I have a family at home to feed and I can't do no heavy work," whereupon Mrs. Erickson telephoned to somebody at the body plant and the answer was that there was no light work for plaintiff. He then returned to his own department and continued until some time in 1944, in a light job, piling light boards. After being absent from his employment, plaintiff reported back some time in May, 1944, to the Ford Motor Company and asked for a time card to go to work and was informed by the employment man, "You don't work in this plant

no more," and plaintiff has been out of employment ever since.

Defendant had notice and knowledge of the injury immediately after it happened. On January 10, 1944, plaintiff made and filed with the department an application for adjustment of claim. Plaintiff did not withdraw this application, but wrote the following letter:

"Iron Mountain, Mich.
. Jan. 22, 1944.

"Dear Sir:

I am writing to say I was called to the compensation dept. of the Ford Motor Co., and they explained that you were going to court and sue them. I do not intend to go on with the court now. As my back is getting better.

yours truly
MICHAEL SCHINDERLE."

The department did not treat this letter as a withdrawal of the claim, but regarded it as an indication that plaintiff wished a delay in the hearing. The letter was evidently an act of good faith and honesty of purpose on the part of plaintiff, who was waiting to see whether he would recover sufficiently so that further prosecution of the claim might prove to be unnecessary.

The later filing of another application for hearing and adjustment of claim on August 28, 1944, for the same injury, is considered by us to be a renewal of the former claim after the necessity for hearing was found to exist. The original claim (January 10, 1944) was therefore timely filed. 2 Comp. Laws 1929, § 8431, as amended by Act No. 245, Pub. Acts 1943 (Comp. Laws Supp. 1945, § 8431, Stat. Ann. 1946 Cum. Supp. § 17.165).

Defendant asserts (citing *LaRosa* v. *Ford Motor Co.*, 270 Mich. 365) that the claim filed by plaintiff

on January 10, 1944, does not show that plaintiff is making a claim for compensation. However, the claim is addressed to the compensation commission and contains the statement, "That this claim relates to a personal injury or disablement from occupational diseases which occurred on or about November 26, 1943, at Ford Motor Company, Dickinson county, Michigan." It indicates the occurrence of the injury and asks the commission to set the matter for a hearing for determination of the rights of the parties.

The compensation commission could not very well determine any other claim than a claim for compensation and we consider the word "claim," as used by plaintiff, must be understood to be a claim for compensation. The injury was described. The employer was further given such information as the law intends.

Defendant claims (1) that the legislature by its amendment to the compensation act, which amendment became effective July 30, 1943, being Act No. 245, Pub. Acts 1943, did not eliminate the necessity of an accidental cause for a compensable injury under the provisions of the workmen's compensation law. Defendant further claims (2) that plaintiff is not entitled to compensation for personal injury when the department of labor and industry failed to find that the personal injury was the result of an accidental cause or failed to find that the personal injury was due to a disability from an occupational injury or disease.

Defendant claims the injury is noncompensable and that the finding by the department is not specific enough to be a basis for an award of compensation.

Defendant in its report dated November 26, 1943, to the question, "How did it occur?," answered, "Employee is authority for the statement that while loading dry kiln cart his partner was handing him

a board and he slipped and felt pain in his back." But to the next question, "Nature and location of same," defendant answered, "Myositis of the back, lumbar region." There is no qualification that this was the statement of plaintiff. It seems to stand as an admission that the injury was myositis. Defendant evidently had the opportunity of consulting with the attending physician, who seems to have been in the employ of the defendant, and who had examined the plaintiff and knew of the character of the injury. It was competent for defendant to waive any question as to the nature of the injury and to give the unqualified answer, "Myositis of the back, lumbar region."

Dr. D. R. Smith, a witness on behalf of plaintiff, testified as follows:

"*Q.* Doctor, did you observe any facial expression that might indicate pain?

"*A.* Well, there was evidence of pain.

"*Q.* In his expression?

"*A.* Yes. Otherwise too.

"*Commissioner:* Now, "otherwise too" what is that?

"*A.* Well, on motion, rotation, principally twisting his body to the right and left, there is definite evidence of limitation of motion and that is evidenced principally by tenderness and spasticity—stiffness in the muscle.

"*Commissioner:* Were the muscle spasms observed?

"*A.* Yes."

Dr. Smith further testified as to what he found on X-ray plates of the plaintiff, as follows:

"*A.* The principal thing here is the arthritic process and that is primarily between the last vertebra—the lumbar vertebra and the sacrum. There is loss of space between the two vertebrae and it has a fuzzy appearance. It is not a clean joint. It is

better demonstrated in the lateral than it is here. This is "A." This picture shows the loss of space here (indicating) and the spur formation here (indicating), the roughness here of the space between the sacrum and the 5th lumbar. It is a picture of arthritis, hypertrophic and atrophic."

Dr. Smith described myositis as "some inflammatory process in the muscles," and further testified,

"*Commissioner:* Doctor, can you tell us what some of the causes of myositis are?

"*A.* Any time there is a spasm of the muscle it is myositis. It may be temporary or it may be acute or a chronic thing."

We have carefully considered the testimony by the three doctors whose testimony is in the record. While we may consider therefrom, and as well from what is common knowledge, that a sudden jar or jerk may cause great pain to an arthritic person, still the medical testimony in this case clearly points out a muscular spasm as having been observed. The testimony does not show the relationship, if any, between the arthritis and the muscular spasm. We cannot assume that the department based its finding, even in part, upon the proposition that the arthritis caused the muscular spasm.

The deputy commissioner found, "That on 11–26, 1943 the above named employee did receive a personal injury arising out of and in the course of his employment by the above named employer." This award was affirmed by the department on appeal. The award is construed by us to be a finding that the injury was, as stated in the report of defendant, *i. e.,* myositis. The injury is attributable to a single event, which occurred as plaintiff turned while handling a heavy board. The myositis did not exist before the injury.

Under the authority of *Anderson* v. *General Motors Corp.*, 313 Mich. 630, the injury in the instant case is compensable. In the *Anderson Case* the plaintiff felt a severe pain in his left leg while lifting a heavy gun barrel and though requesting permission to cease his work for the day, he was directed to remain at work for the rest of the day. He was afterward found to be disabled for that kind of heavy work. His condition was diagnosed as "ruptured nucleous polyposis". The award of compensation in that case was affirmed.

The parties in the instant case dispute as to whether defendant's report denying compensability precludes defendant from claiming the benefit of the statute of limitations as to claim of plaintiff filed August 28, 1944. This question requires no decision in view of our determination that the claim filed January 10, 1944, was properly acted on by the department as timely filed and was alive as a claim when the hearing before the department was in progress.

Defendant claims that there was no showing in the record of the loss of time on various dates between January 3, 1944 and April 25, 1944, as set forth in the award. We have examined the testimony of witness Swanson and find that the dates for compensation are correctly found by the department, with the doubtful exception of 2 or 3 days. Defendant's objection is not as to this minor discrepancy, but as to whether plaintiff offered testimony to show that the time lost was because of the injury and not through plaintiff's mere refusal to work for defendant. We find that plaintiff testified he worked when he could, until the final termination of his employment, and that this testimony was in connection with time lost in defendant's employment.

The award appealed from is affirmed. Costs to plaintiff.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, BOYLES, NORTH, and DETHMERS, JJ., concurred.