McGREGOR *v.* CONSERVATION DEPARTMENT.

WORKMEN'S COMPENSATION—FIRE WARDEN—CORONARY THROMBOSIS —PROXIMATE CAUSE.

Disability due to coronary thrombosis of plaintiff fire warden for defendant conservation department found by workmen's compensation commission to have been due to strenuous efforts required in plaintiff's employment *held,* not a disability caused by a disease due to causes and conditions characteristic of and peculiar to the business of the defendant employer nor to have arisen out of and in the course of his employment; the exertion involved not having been shown to have been unusual to, or greater than, that experienced in the general field of common labor.

ADAMS and BUSHNELL, JJ., dissenting.

Appeal from Workmen's Compensation Commission. Submitted June 25, 1953. (Docket No. 79, Calendar No. 45,723.) Decided November 27, 1953.

Bruce L. McGregor presented his claim against Department of Conservation, employer, and State Accident Fund, insurer, for medical expenses in

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 210–212, 255.
Death from heart disease. 19 ALR 110; 28 ALR 209; 60 ALR 1314.

treating coronary thrombosis.  Award to plaintiff.
Defendants appeal.  Reversed.

*Harold B. Hughes,* for plaintiff.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for
defendants.

ADAMS, J. (*dissenting*).   Bruce L. McGregor,
plaintiff and appellee, seeks an award under the
provisions of the workmen's compensation act for
medical and hospital expenses incurred as a result
of a coronary thrombosis suffered on May 11, 1950.
At that time and for some years prior thereto, he
was employed as a fire warden by the Michigan de-
partment of conservation in the Harrison area.
Except for a temporary feeling of exhaustion on
April 23d, he was in apparent good health and had
required no recent medical attention.

His usual duties as a fire warden were varied and
involved fire prevention, fire-fighting and supervi-
sion of men and equipment.   The months of April
and May are considered to be the fire season in
Michigan and during that period the work of a fire
warden is quite strenuous.   Plaintiff had attended
and assisted in controlling 4 fires on May 6th, work-
ing 19 hours on that day.   On May 7th and 8th he
attended 1 fire on each day and 2 on May 9th.   On
May 11th, after spending the morning at other work,
he was called from his home before he could eat lunch
to a fire east of Harrison.   He drove a truck to the
area, assisted in unloading fire-fighting apparatus
and then worked for the greater portion of an hour
in fighting the fire.   During that time he was on and
off his truck a number of times and while off the
truck was observed to have moved at a "dog trot"
while extinguishing flames.   Later in the afternoon

he became ill and was hospitalized. A medical diagnosis indicated a coronary thrombosis.

All witnesses testified that no accident or fortuitous event occurred which of itself could have caused plaintiff's coronary thrombosis but that to the contrary everything plaintiff did both on May 11th and in the days prior thereto was a part of the normal but strenuous duties of a fire warden that might reasonably be anticipated during the fire season.

Only 1 doctor was called to testify. He was an experienced practitioner and had made special studies in diseases of the heart. The following statements from the record fairly summarize his testimony:

"It is my opinion that on May 11th this man had a coronary thrombosis. It is also my opinion that he had had, or perhaps I should say had, a preexisting arteriosclerosis of the coronary vessel for a time which I cannot determine. I believe that he may have had evidence of this arteriosclerosis, in the form of pain, at some time preceding the actual thrombosis, but I feel confident that his actual coronary thrombosis occurred on May 11th, and I have laboratory evidence to support my opinion.
\* \* \*

"*Q.* And the condition here of Mr. McGregor, the testimony this morning was that during the early part of May there was an unusual amount of work, fire fighting. Would that have any bearing on his condition?

"*A.* Yes, it could.

"*Q.* In what way, Doctor?

"*A.* Well, coronary thrombosis may occur at rest. It is more likely to occur following exertion, if there is a predisposition to coronary thrombosis, if no exertion occurred it might not occur for some years, whereas if exertion occurred or sufficient exertion occurred it could bring it on much sooner. \* \* \*

"*Q.* Did you question him as to his immediate activity preceding that?

"*A.* Yes, I did.

"*Q.* From your information which you received were you able to determine the cause of the thrombosis?

"*A.* The history that the man gave me was that he had been exerting himself fighting fire and I felt that the over-exhaustion which he described was the direct cause leading to this attack.  *  *  *

"*Q.* What was there that happened to him out there that caused this thrombosis?

"*A.* Perhaps the only thing I could say that happened to him was that he was working rather hard and exerting himself and that may have brought this on.

"*Q.* You didn't get such a history on his part?

"*A.* That is the history I got.

"*Q.* Would you say that the smoke he was exposed to which was a condition characteristic of and peculiar to the business of his employers, might have caused his coronary thrombosis?

"*A.* I do not feel that the smoke would have as much to do with the production of the coronary thrombosis as the exertion which he described to me.

"*Q.* What exertion did he describe to you?

"*A.* The exertion of having fought fires for several days preceding the attack and of having—

"*Q.* You say he gave you that history of what occurred several days before, not what happened to him on May 11th. Now, would that have anything to do with this attack?

"*A.* The exertion that he had had over that period of time could have tired this man and I think that could have been a factor.  *  *  *

"*Q.* Did you determine in this case what that disease was?

"*A.* We are unable to determine the amount or the presence of the disease, except at postmortem, in an individual case. However, we know that a hardening of the coronary artery usually precedes an attack

of coronary thrombosis. That hardening would lead to a narrowing of the coronary artery, and would pre-dispose to the injury."

Plaintiff originally filed a claim for medical and hospital expense resulting from the coronary thrombosis under part 2 of the workmen's compensation act (CL 1948, § 412.1 *et seq.* [Stat Ann 1950 Rev § 17.151 *et seq.*]). At the hearing he was permitted to amend to bring his claim, in the alternative, under either part 2 or part 7 of the act (CL 1948, § 417.1 *et seq.* [Stat Ann 1950 Rev § 17.220 *et seq.*]).

A deputy commissioner found that plaintiff's "personal injury in this case was due to conditions which are characteristic of and peculiar to his employment, and arose out of his employment" and granted an award under the provisions of part 7 of the act. The award was affirmed upon review before the commission and the department has appealed.

The only question involved here is whether plaintiff's disability was such as is included under the provisions of subsection (c), section 1, part 7 of the workmen's compensation act, the pertinent portion of which reads as follows:

"Whenever used in this act:   *   *   *
"The term 'personal injury' shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

Testimony is undisputed that plaintiff, although unaware of it, had a pre-existing arteriosclerosis of a coronary vessel and that his employment required strenuous work and long hours when necessary. During the week preceding the disability, plaintiff had attended a number of forest fires in what was

considered the peak period of the year for such fires. In the uncontradicted opinion of the medical doctor, the exertion arising out of plaintiff's strenuous work "could have tired" plaintiff, and he "felt that the over-exhaustion * * * was the direct cause leading to this attack."

Defendants contend that a decision in this case is controlled by *Hagopian* v. *City of Highland Park,* 313 Mich 608, wherein we held that an employee who suffered disability as the result of a heart condition could not recover under part 7 of the act, laying special emphasis on the following phraseology found therein:

"Ordinary diseases of life to which the public is generally exposed outside of the employment shall not be compensable."

That decision, however, was founded upon a factual situation that differed from the present one. There the plaintiff in the usual course of his work was required to lift and empty cans of garbage, but there was no showing that the cans were of an excessive weight or that the work was more strenuous than that required in other normal occupations.

"There is absolutely no showing or claim here that the disability is one arising out of the particular type of work or resulting from the nature of the work performed. * * *

"There was nothing unusual about the weight of the cans and this work was done regularly by defendant's employees." *Hagopian* v. *City of Highland Park, supra.*

In the case of *Bederin* v. *Ex-Cell-O Corporation,* 311 Mich 334, compensation was denied to plaintiff who suffered from arthritis. There we affirmed the finding of the commission that arthritis is not a disease due to causes and conditions which are characteristic of and peculiar to the business of the

employer. The commission pointed out that they did not think that the "conditions. of her employment caused a greater hazard than would be experienced in the normal run of employment; nor were the tasks which she performed more hazardous than any other tasks of such a nonstrenuous nature."

In the case at bar, plaintiff's work is not the normal run of employment and obviously cannot be defined as nonstrenuous.

Nor are we confronted with the situation found in *Poindexter* v. *Department of Conservation,* 316 Mich 235, where an award was sought for death resulting from coronary thrombosis but where the record showed nothing unusual or overstrenuous in decedent's work. At most, the record indicated mental strain while testifying as a witness in court proceedings. No physical strain being shown, an award was denied under the rule stated in the *Hagopian Case.*

The instant case is likewise to be distinguished from our decision in *O'Neil* v. *W. R. Spencer Grocer Co.,* 316 Mich 320, where a compensation award was denied for death caused by cardiac failure. There the record was void of any evidence showing a fortuitous event or strenuous or unusual effort. It was there claimed that driving a car in a heavy snowstorm could be termed a fortuitous event. In the opinion of this Court, however, the snowstorm was an experience common to all motorists in that area and deceased's death was due only to a disease of life to which the general public is exposed.

Recently, in the case of *May* v. *A. H. Powell Lumber Co.,* 335 Mich 420, this Court denied an award of compensation for death resulting from coronary disease aggravated by the inhalation of fumes from a tractor. The award there was denied for the reason that the claim was brought under part 2 of the act and no accident or fortuitous event was

shown in the record. Here we are concerned with a claim under part 7.

We think that the rule to be applied in this case is best enunciated in *Madden's Case*, 222 Mass 487 (111 NE 379, LRA 1916D, 1000) and quoted with approval in *Hagopian* v. *City of Highland Park, supra.*

"A disease, which under any rational work is likely to progress so as finally to disable the employee, does not become a 'personal injury' under the act merely because it reaches the point of disablement while work for a subscriber is being pursued. It is only when there is a direct causal connection between the exertion of the employment and the injury that an award of compensation can be made. The substantial question is whether the diseased condition was the cause, or whether the employment was a proximate contributing cause. In the former cause, no award can be made; in the latter, it ought to be made."

The commission has the exclusive responsibility for the finding of facts and their findings are conclusive. (CL 1948, § 413.12 [Stat Ann 1950 Rev § 17.186]). Here undisputed testimony indicates and the commission so found, that the strenuous efforts required in plaintiff's employment were a proximate and contributing cause of his disability.

We are of the opinion that under the circumstances of this case, the plaintiff's disability was due to causes and conditions characteristic of and peculiar to the business of the employer and that it arose out of and in the course of such employment. The finding of the commission should not be disturbed. The award should be affirmed, costs to appellee.

BUSHNELL, J., concurred with ADAMS, J.

Dethmers, C. J. I do not concur in affirmance. As Mr. Justice Adams writes, (1) "plaintiff had a pre-existing arteriosclerosis of a coronary vessel", (2) "no accident or fortuitous event occurred", and (3) "everything plaintiff did * * * was a part of the normal but strenuous duties of a fire warden that might reasonably be anticipated during the fire season." A doctor testified that plaintiff had been working "rather hard" and that exertion over a period of time could have tired him and been a factor contributing to coronary thrombosis, because such attacks, in those predisposed thereto (as plaintiff was), are more likely to follow exertion, though they may occur at rest. If plaintiff is entitled to compensation on such showing, every arteriosclerotic employee would be so entitled after any disabling coronary thrombosis sustained during employment involving exertion or, at least, hard physical labor. In *Hagopian* v. *City of Highland Park,* 313 Mich 608, plaintiff was engaged, with the aid of another, in the strenuous physical exertion of lifting heavy—but not unusually heavy—refuse cans from the street to a man on a truck, as regularly done by the defendant's employees. After noting those facts and observing that there had been no accident or fortuitous event to aggravate the plaintiff's pre-existing heart condition, we held noncompensable the disability resulting from a heart attack sustained on the job. In the instant case, plaintiff, at most, was doing the hard labor customarily performed by him and fellow employees during at least 2 months of each year which required a degree of physical exertion not shown to have been unusual to or greater than that ordinarily experienced in the general field of common labor. Exertion to that extent did not constitute a fortuitous event. As in *Hagopian,* the disability is not caused by "a disease which is due to causes and conditions which are characteristic of and peculiar to

the business of the employer and which arises out of and in the course of employment." The holding in *Hagopian* is controlling and, accordingly, the award is set aside, with costs to defendants.

BUTZEL, CARR, SHARPE, BOYLES, and REID, JJ., concurred with DETHMERS, C. J.