SIMPSON *v.* MATTHES.

WORKMEN'S COMPENSATION—FINDING OF COMMISSION—EVIDENCE— PERSONAL INJURY DUE TO CAUSES CHARACTERISTIC OF EMPLOYMENT.
Finding of workmen's compensation commission that coal loader's employment presented "a hazard of back distress greater than that found generally in employment" and "that he received a personal injury due to causes and conditions characteristic of and peculiar to his employment" *held*, not supported by competent evidence, there being no disclosure as to the size or weight of the so-called trimmer or conveyor which plaintiff was required to use when the claimed injury occurred, nor any showing that an unusual or excessive strain was imposed on plaintiff's physique or that he exerted himself in a manner unusual to or greater than is ordinarily the case in the general field of common labor, hence, award to plaintiff is ordered vacated.

Appeal from Workmen's Compensation Commission. Submitted June 8, 1955. (Docket No. 30, Calendar No. 46,333.) Decided October 3, 1955.

Ira Simpson presented his claim for compensation from Lulu Matthes, doing business as Herman Matthes, and Auto Owners Insurance Company for in-

REFERENCES FOR POINTS IN HEADNOTES
58 Am Jur, Workmen's Compensation §§ 450, 481.

jury to back. Award to plaintiff. Defendants appeal. Reversed and remanded.

*Warner & Hart,* for defendants.

KELLY, J. This is an appeal from an order of the workmen's compensation commission modifying the award of the deputy commissioner.

The main question presented is whether there was competent evidence to sustain the conclusion of the commission that:

"Since plaintiff's employment as coal loader presents a hazard of back distress greater than that found generally in employment, we find that he received a personal injury due to causes and conditions characteristic of and peculiar to his employment."

The only reference in the record as to the type of work plaintiff was engaged in is found in the testimony of plaintiff before the deputy commissioner and in a statement plaintiff made shortly after the date of the claimed injury. In this regard, plaintiff testified:

"*Q.* Mr. Simpson, can you tell us what happened while, during your employment on the 22d day of September; do you recall what your work was that day?

"*A.* Yes, I took out a delivery of coal and I unloaded it and when I went to put the trimmer on the truck—it was quite a heavy trimmer and I have to lift it as high as my head—

"*Q.* What is a trimmer?

"*A.* It's a conveyor that they haul on the side of the truck to hold the coal.

"*Q.* How does it work?

"*A.* Well, you take it off and put it on the back end of the truck and raise the box up and dump the coal and it runs down the trimmer.

"*Q.* Does it have a motor?

"*A.* Well, this one didn't. It was hydraulic on a power take-off on the truck.

"*Q.* Did it turn a belt and run the coal?

"*A.* That's right.

"*Q.* You said you had unloaded the coal and were loading up to leave?

"*A.* Loading up to leave. I lifted it up in the rack and my foot slipped and it felt just like something pulled apart in my back."

The reference in plaintiff's statement reads:

"I had reported to work that day and had made some coal deliveries. Then about 10 a.m. I put another load on the truck, and was going to put the trimmer or conveyor on to unload the truck. I put it on and went to the home to unload the load. I took the trimmer off and unloaded the load. I then went to put the trimmer back on. While I was lifting the trimmer I got a feeling like something pulled apart in the middle of the lower part of my back."

The deputy commissioner awarded compensation, holding that plaintiff sustained a personal injury on September 22, 1952, without determining whether such was accidental or an award justified because of the nature of the occupation.

In its opinion on review, the commission commented upon plaintiff's application for hearing, his testimony and statement, as follows:

"In his application for hearing plaintiff stated: 'I hurt my back while lifting a conveyor onto a coal truck. It didn't bother me much until I returned to the yard and started shoveling coal. The longer I worked the worse it got.' However, at the hearing of the cause, in relating the episode of injury, plaintiff testified that his foot slipped. Except for this claim of having slipped, his account of the circumstances surrounding the injury was consistent with his previous versions, both of which reports are more worthy of credibility. 'We, therefore, find that

plaintiff did not sustain an accidental injury September 22, 1952.' "

Plaintiff's witness, Dr. Don F. Kudner, of Jackson, stated that the plaintiff had a structurally weak back and that at the time he first examined plaintiff in September, 1953, he was suffering from chronic arthritis, but that this condition could have been aggravated or projected by the injury.

Dr. Sylvester J. O'Connor, a member of the staff, department of orthopedic surgery, University of Michigan hospital, examined plaintiff on 6 different occasions between January 9, 1953, and February 18, 1954. He stated there were no signs to indicate a specific back disorder, and that he thought "it was largely a psychosomatic problem."

The deputy commissioner, in his award, referred to Dr. O'Connor's testimony as follows:

"Further, I find that: the plaintiff should cooperate by returning to a gainful employment as suggested in Dr. O'Connor's testimony. Compensation should be and hereby is suspended from February 18, 1954, until such time as the plaintiff gives a good honest attempt to rehabilitate himself back to employment."

The commission in its opinion, referring to Dr. O'Connor's testimony, said:

"Dr. O'Connor at the time of his last examination could find no objective basis for disability. There being no physical basis for disability beyond February 18, 1954, and there being no testimony connecting plaintiff's psychosomatic complaints to the injury, we find that plaintiff has not established disability beyond that date."

The record does not disclose the size nor the weight of the so-called trimmer or conveyor. No proof was offered as to the number of times in a

given day plaintiff was required to load or unload the said trimmer or conveyor. The record in this case does not show that an unusual or excessive strain was imposed on plaintiff's physique, or that he exerted himself in a manner unusual to or greater than is ordinarily the case in the general field of common labor. This Court has held that that is the test of the existence of an accident or fortuitous event: *Nichols* v. *Central Crate & Box Co.,* 340 Mich 232; *McGregor* v. *Conservation Department,* 338 Mich 93; and *Arnold* v. *Ogle Construction Co.,* 333 Mich 652.

The commission in its opinion gave no reason as to why it came to such a conclusion. There was no competent evidence to support the finding of the commission that plaintiff's employment presented "a hazard of back distress greater than that found generally in employment" and "that he received a personal injury due to causes and conditions characteristic of and peculiar to his employment."

The case is remanded to the workmen's compensation commission with directions to vacate the award. Defendants may have costs.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred with KELLY, J.

SMITH, J., concurred in the result.