## COOMBE v. PENEGOR.

Workmen's Compensation—Logger—Total Disability—Subarach-noid Hemorrhage—Proximate Cause—Evidence.

Logger, 26 years of age, apparently in previous good health, who tightened binder chain around load, *held,* to have established right to workmen's compensation for total disability due to paralysis resulting from subarachnoid hemorrhage, where it appears the injury arose out of and during the course of his employment (CL 1948, §§ 412.1, 417.1).

Sharpe and Carr, JJ., dissenting.

Appeal from Workmen's Compensation Appeal Board. Submitted October 11, 1956. (Docket No. 23, Calendar No. 46,733.) Decided June 10, 1957.

Ewart J. Coombe, Jr., presented his claim for compensation against Clyde E. Penegor and State Accident Fund for total disability resulting from excessive strain. Award to plaintiff. Defendants appeal. Affirmed.

---

References for Points in Headnotes

[1] 58 Am Jur, Workmen's Compensation § 255 *et seq.*

*Donnelly & O'Brien* (*Richard J. O'Brien,* of counsel), for plaintiff.

*Harry F. Briggs* (*Stanley Dodge,* of counsel), for defendants.

Black, J. This is another case where right to compensation is claimed by the employee and denied by the employer on strength or weakness of facts showing that the employee sustained *internal* injury while on the job. Plaintiff claims under part 7 of the workmen's compensation act (CL 1948, § 417.1 *et seq.* [Stat Ann 1950 Rev § 17.220 *et seq.*]). We proceed to determine whether the appeal board was justified in awarding him compensation thereunder.*

The appeal board found, on supporting evidence, as follows:

"On or about February 17, 1953, plaintiff, while employed as a truck driver for defendant logging company, suffered an injury and ensuing total disability for which he claims compensation. Application for hearing was filed on May 15, 1953. Hearing was held on July 22, 1953, and on December 31, 1953, the hearing referee entered an award denying compensation.

"Plaintiff was about 26 years old at the time of injury. He was living with and supporting his wife, Charlotte, and 2 children, Peter James, born May 24, 1949, and Douglas Gerald, born December 2, 1952. Plaintiff's average weekly wage was $56.23.

"Plaintiff had been in the employ of Penegor for about 2 years up to the date of injury. He worked in a small crew usually consisting of 5 men. Two trucks were normally used. At times extra trucks were added. The men helped each other in the work of making up loads of logs preparatory to hauling

---

* No intimation is made that claim for compensation under part 7 precludes an award under part 2 or vice versa. That question is neither before us nor necessary to decision.

from the woods. Fellow workers testified that prior to February 17, 1952, plaintiff had been a good, steady, reliable worker and that he had never complained of headaches, dizziness or any physical disability.

"A regular and necessary part of the work of plaintiff and his associates was to securely bind the logs on the trucks before commencing to haul. Each load was bound in more than 1 place. In performing this operation a long safety chain was attached by a hook to the right side of a bunk on the truck and was thrown over the load of logs to the left side. A shorter chain was affixed to the left side of the bunk. The 2 chains were brought together and tightened by means of a load binder, which is a sort of lever to each end of which short pieces of chain with hooks are attached.

"The undisputed testimony of the crew boss, Donald Kangas, and 2 crew members, Neilo Maki and Fabian Godell, is to the effect that the fastening and tightening of the load binder took a great deal of physical effort. Kangas testified that the work took a lot of work and energy. Godell testified that it took very much effort every time and that he had difficulty very many times performing this operation and had to have help. Maki testified it 'takes very much pounds of exertion to pull it down and bind the chain around the load.' On some occasions the job was so difficult as to require the use of a pipe as an extension lever. Kangas, Maki and Godell all had personal experience in fastening load binders.
\*   \*   \*

"On the morning of February 17, 1953, plaintiff pulled himself up a little on a load of logs to get the top hook of the binder caught on the safety chain. He had his feet back on the trailer wheel and pulled himself up. When affixing the top part of the binder to the safety chain, plaintiff was 2 to 2-1/2 feet off the ground. Maki saw plaintiff hook the binder. Maki then started to walk away. Godell was standing nearby making a record of the logs. Neither saw

plaintiff descend from the truck. Seconds later plaintiff was seen by both Maki and Godell 4 to 6 steps from where he had affixed the binder. Plaintiff had his hands on his head, exclaimed, 'What's that, what's that', twisted and fell unconscious to the ground on his back. Maki went for help and then checked the binder and found that it was in place. No pipe was seen in the vicinity and it appears that none was used by plaintiff as a lever and that plaintiff had no assistance from anyone else on this occasion."

Plaintiff was immediately taken to a hospital. It was shown that his left side became and yet remains paralyzed and that he is still suffering from impairment of memory. Dr. Aldrich, the first physician in charge of the case, treated plaintiff until March 1, 1953. He found plaintiff suffering from severe headaches, nausea and a stiff neck, followed almost immediately by progressive paralysis of the left arm and leg. His diagnosis of cause was subarachnoid hemorrhage, explained as follows:

"There are 3 coverings of the brain and the arachnoid covering is the covering that includes the blood vessels of the brain. And when we say subarachnoid hemorrhage we mean 1 of the blood vessels in this covering has ruptured and allowed the blood to enter the arachnoid space which produces the symptoms that this man had."

Dr. Aldrich testified that strenuous physical exertion elevates blood pressure and that such could have caused the rupture of brain covering and disabling results shown here. In answer to the cross-examiner's question, "Is the blood pressure always raised when you exert yourself?", he said this:

"It depends on your exact position. For instance, or in explanation, the liver is a reservoir for possibly a third of the blood in your body, and if you should bend or change your position in such a way

as to constrict the liver you will force possibly another quart of blood into the peripheral circulation and the brain is most affected by the change of blood volume and that will produce a marked change of blood pressure."

The appeal board, finding for plaintiff under said part 7, said:

"Plaintiff's regular and daily work in fastening load binders required that he exert very great and unusual effort, sometimes, as on February 17, 1953, in an awkward and disadvantageous position. Plaintiff had been engaged in this work for about 2 years. Plaintiff's work presented a substantial hazard of injury which was far in excess of that attending employment in general. The work described caused the subarachnoid hemorrhage which totally disabled plaintiff. The injury and disability resulted from causes and conditions characteristic of and peculiar to the business of the employer and arose out of and in the course of employment."

*First:* In opinions aimed toward defeat of compensation under part 7 as well as part 2 of the act, our favorite expression is that the given claimant at most was doing work "which required a degree of physical exertion not shown to have been unusual to or greater than that ordinarily experienced in the general field of common labor" (*McGregor* v. *Conservation Department,* 338 Mich 93, 101; *Nichols* v. *Central Crate & Box Company,* 340 Mich 232; *Simpson* v. *Matthes,* 343 Mich 125). Defendants ask that we apply such rule.

In opinions aimed toward upholding compensation under part 7, we have announced and followed a broader interpretation of the statute, that is to say, the legislative purpose is said to be one of providing compensation (if other essentials be present) where the conditions of employment "result in a hazard which distinguishes it in character from the gen-

eral run of occupations" (*Samels* v. *Goodyear Tire & Rubber Co.*, 317 Mich 149, 156; *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Company*, 329 Mich 273, 276; *Gibbs* v. *Motor Wheel Corp.*, 333 Mich 617; *Kepsel* v. *McCready & Sons*, 345 Mich 335). Plaintiff asks that we apply this latter test.

Who is to say, until we do, which of these warring groups of decisions shall determine applicability of part 7? The department below, as is manifest from successive opinions brought here on certiorari, stands utterly bewildered. *Kepsel* puts *Underwood* on top for the moment, but for how long? No one has known, since *McGregor* snubbed *Underwood* in 1953, whether we will choose *McGregor's* rule in a given case or whether the favor of the day will go to *Underwood*. When one is applied the other is ignored, and so we leave legislation heralding prompt administrative determination of compensation cases in a state of litigious and expensive uncertainty. No wonder the moccasin telegraph brings to this claustral tower occasional tidings of guarded comment that the state of majority judicial dyspepsia on opinion day is more apt than not to be controlling of case-choice when a part 7 case is called up.

The bald situation being what it is, I propose timid inquiry into the fact-premise of *McGregor's* quoted test. That test in my view stands as patent and unworkable judicial caprice. It should be cast out in favor of the better one *Underwood* gave us when the Court was at least unanimous in support of a reasoned opinion.

What, indeed, is the *McGregor*-proclaimed "degree of physical exertion" mankind ordinarily experiences in the general field of common labor? Is it judicially noticed in these part 7 cases? If so, by what authority or known experience? If not, how must a claimant of compensation under part 7 go

about proving such degree of exertion, according to rules of evidence, that his record may supply the comparison said, in above cases, to be lacking? Should he prove up the foot-pound units of energy one must apply to boxcar freight handling or piano moving, or such as are known to paper-pickers in public parks? Where, indeed, did this Court obtain the facts on which it has declared and created such exertive degree-standard? They—I repeat the word "facts"—cannot be found in the printed records of *McGregor, Nichols,* or *Simpson.* And the vagaries of veteran judges, whose sedentary lives have long since become dissociated from physical labor and exertion-degrees thereof, give us no aid. Or, perhaps, do they? Will someone rise here and say—of personal experience or otherwise—that the head-to-toe muscular effort of clinging by one hand to the side of a huge truckload of logs,* meanwhile applying with outstretched remaining hand the straining power-effort requisite to safe lever-tightening of statutory log-binding chains,† is not apt to throb the temples and thus produce distinguishable risk of the very circulatory rupture Coombe suffered? I think not. We must, perforce, accept what men better equipped to know have placed in this record on corporal oath. By the same token, we should have done with further assumption of omnicompetent knowledge of the degree or degrees of physical exertion common labor applies to its varied tasks.

The views just stated lead to consideration of defendants' sole contention in this case. They say we should hold, as a matter of law by force of *McGreg-*

---

* This particular load consisted of between 30 and 40 hardwood logs.

† It is in order, here, to refer to the rigid requirements of the log-binding statute. It specifies that logs shall be securely fastened to the body or frame of the vehicle by means of toggle and wrapping chains "having a breaking strength of not less than 8,000 pounds" (CLS 1954, § 257.720 [Stat Ann 1952 Rev § 9.2420]).

*or,* that Coombe failed to show the work regularly performed by him did require a degree of physical exertion in excess of that ordinarily experienced in the general field of common labor. I think we must agree that Coombe failed of such proof because he did not establish such exertive degree-criterion of common labor. But we should, at the same time, confess that no one could hope to bear such an evidence-burden absent assembly of testimony covering the field of general common labor, and the diversity of tasks thereof, with experts providing (if at all) the fancifully average degree-standard *Mc-Gregor* exacts. I reject then, *McGregor's* test as decisive here. It is unworthy of proof, and worthless if proved.

*Second:* I turn from *McGregor* to the statute itself. It says that a disabling personal injury sustained as in present circumstances is compensable if such be "due to causes and conditions which are characteristic of and peculiar to the business of the employer" (CL 1948, § 417.1 [Stat Ann 1950 Rev § 17.220]), and directs the department below to ascertain, when called upon, presence or absence of causes and conditions characteristic of and peculiar to the work being done. This means, as declared in our more enlightened decisions, that a claimant under part 7 is obligated to establish no more than that the conditions of his employment "result in a hazard which distinguishes it in character from the general run of occupations" (*Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Co., supra; Gibbs* v. *Motor Wheel Corp., supra; Kepsel* v. *McCready & Sons, supra*).

*Underwood's* test of applicability of part 7 is simple and comparatively more understandable. Instead of an impossible-of-proof exertive degree-standard, it requires only that some proof be made of special and distinguishing hazards—something

out of the ordinary in the way of duty-risk according to fair view of reasonable men—before an award can be ordered under part 7. There is an abundance of such proof here, and so ends the purpose of this writ of certiorari.

When all is said, this case presents certain fairly-established facts of decisive moment. Coombe enjoyed the health and vigor of a young man, experienced and used to the manual work his employer engaged him to do. He was doing that work, right well according to the foreman in charge, until arrival of the very moment of distress. He then became and remained seriously disabled. Immediately prior to such distress and disability, he was performing for his employer a special and out-of-the-ordinary task, the distinctive nature of which reasonably accounts for the finally diagnosed rupture and disabling hemorrhage.

Such an assembly of facts should be, and in my view is, sufficient to sustain this award. I therefore vote to affirm on strength of *Underwood's* construction and application of part 7. I vote also to inter the herein criticized rule of *McGregor, Nichols,* and *Simpson.* Plaintiff should recover costs.

ADDENDUM (June 10, 1957).

This case was duly assigned to the writer, preceding submission during our October term last year. In pursuance of such assignment the foregoing opinion was prepared and distributed for consideration of my Brothers on October 29, 1956. As is disclosed therein by quotation, the appeal board upheld Coombe's claim for compensation solely on authority of part 7 of the compensation act. On review here, Coombe urged affirmance exclusively under part 7 and so informed the court during oral argument. So far as the writer is concerned Coombe and

the appeal board were right in such regard—hence, tenor of the foregoing opinion.

Justices Dethmers, Carr, Edwards, Smith and Kelly have now written in the case and, in belated interim, our decision in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, has been handed down. *Sheppard* holds that a disabling injury sustained as in this case of Coombe is compensable under part 2 of the act. Accordingly, that which hitherto was not sustainable under part 2 is now amply supported by part 2 and there is no occasion for resort to war over relevant construction of part 7. In these circumstances I vote to affirm Coombe's award under part 2 and join Mr. Justice Smith in his compendious summary of Coombe's case.

Dethmers, C. J. (*concurring*). I concur in affirmance of the award to plaintiff.

To avoid further confusion, it should be observed that whether a plaintiff's work was such as "required a degree of physical exertion not shown to have been unusual to or greater than that ordinarily experienced in the general field of common labor" is the test which has been employed by this Court, as in *McGregor* v. *Conservation Department,* 338 Mich 93; *Nichols* v. *Central Crate & Box Co.,* 340 Mich 232; and *Simpson* v. *Matthes,* 343 Mich 125, only for the purpose of determining whether an accidental or fortuitous causal event had occurred such as to warrant compensation under part 2 of the act.* So long as this Court adheres to the view that "accident" is still prerequisite to compensation under part 2, application of that test to determine the occurrence of an accident is in nowise inconsistent with the use of the different test, borrowed from Connecticut

* CL 1948, § 412.1 *et seq.* (Stat Ann 1950 Rev § 17.151 *et seq.*), as amended.

(*Glodenis* v. *American Brass Co.*, 118 Conn 29, 40 [170 A 146]), "whether the conditions of plaintiff's employment must result in a hazard which distinguishes it in character from the general run of occupations" for the distinctly different purpose of determining, as in *Samels* v. *Goodyear Tire & Rubber Company*, 317 Mich 149; *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Company*, 329 Mich 273; *Fields* v. *G. M. Brass & Aluminum Foundry Company*, 332 Mich 113; *Gibbs* v. *Motor Wheel Corporation*, 333 Mich 617; and *Kepsel* v. *McCready & Sons*, 345 Mich 335, whether the disability is one which is, in the language of the statute, "due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment" and, hence, is compensable under the occupational diseases provisions of part 7 of the act.* Part 2 is designed to reach one situation and part 7 another. Application of the appropriate test for determining compensability under part 2 does not amount to following a narrower interpretation of the statute than does application of the equally appropriate but different test for determining compensability under part 7. There is no conflict in that respect between the cases applying the former test to determine compensability under part 2 and those applying the latter test to determine compensability under part 7. It is the statute, not judicial fiat, which has fixed a different basis for compensability under the one than under the other.

The appeal board's finding, supported by competent evidence, was that plaintiff suffered a subarachnoid hemorrhage which "may have been caused by this single incident" consisting of his having, on the

---

* CL 1948, § 417.1 *et seq.* (Stat Ann 1950 Rev § 17.220 *et seq.*), as amended.

date of injury, "fastened a load binder requiring very great and strenuous effort prior to falling in an unconscious state." There is no competent medical testimony or other evidence to support a finding, and the appeal board did not find, that the hemorrhage actually was the result of the cumulative effects of frequent, strenuous exertions on the job in fastening such load binders on previous occasions. (Incidentally, the testimony is that on the occasion in question he was engaged in fastening the first load of the day.) Rather, it was the position of the appeal board that it is immaterial whether the injury resulted from a single incident or from a regular course of strenuous and unusual exertion, the board holding that in the first situation plaintiff would be entitled to compensation under part 2 and in the latter under part 7. Under the medical testimony in the record, this is clearly a single-incident case, in which the injury may be localized as to time and place. As said in *Dailey* v. *River Raisin Paper Co.,* 269 Mich 443, 446, 447:

"An injury whch may be so localized hardly seems to fit the definition of an occupational disease as stated by the Court in *Adams* v. *Acme White Lead & Color Works.* 182 Mich 157, 160 (LRA1916A, 283, Ann Cas 1916D, 689, 6 NCCA 482), as

" 'A disease arising from causes incident to the patient's occupation, as lead poisoning among painters. * *· * 'It is a matter of weeks or months or years." * * * It is drop by drop, it is little by little, day after day for weeks and months, and finally enough is accumulated to produce symptoms.' "

In *Beaty* v. *Foundation Co.,* 245 Mich 256, 259, this Court said:

"But when it is caused by a fixed and single fortuitous and preventable circumstance it is not an occupational disease but an accident within the meaning of the workmen's compensation law."

(In making the above distinctions between disabilities compensable under part 2 of the act and those due to occupational disease, use of the term "accident" with respect to the former, pertinent both before and after adoption of part 7 of the act in 1937, is without particular significance since the 1943 amendment* eliminating "accident" as prerequisite to compensation under part 2.) See *Adams* v. *Acme White Lead & Color Works,* 182 Mich 157, 160 (160 LRA1916A, 283, Ann Cas 1916D, 689, 6 NCCA 482), in which this Court also said concerning occupational disease:

"In any case it is not the result of one contact or a single event."

And see, to the same effect, *Williams* v. *Missouri Valley Bridge & Iron Co.,* 212 Mich 150; *Cazan* v. *City of Detroit,* 279 Mich 86; *Cell* v. *Yale & Towne Manfg. Co.,* 281 Mich 564; *Thomas* v. *Parker Rust Proof Co.,* 284 Mich 260; *Lucier* v. *Pansy Hosiery Co., Inc.,* 286 Mich 585. Accordingly, as it seems to me, there is no occasion here for discussion of the test applicable to or cases controlling of the question of compensability under part 7 of the act. This is a part 2 case.

Plaintiff suffered a disability resulting from a personal injury arising out of and in the course of his employment. For the reasons set forth in my opinion in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, he is entitled to compensation under part 2 of the act. I would affirm the award, with costs to plaintiff.

CARR, J. (*dissenting*). The facts in this case, insofar as established by the testimony taken before a deputy of the workmen's compensation commission, are not materially in dispute. For approxi-

* PA 1943, No 245.

mately 2 years prior to February 17, 1953, plaintiff was employed by defendant Penegor as a logging truck driver. On the date mentioned, while engaged in such work, he suffered a subarachnoid hemorrhage as a result of which he became partially paralyzed. Application for compensation was made in accordance with the workmen's compensation act,* and proofs in support of plaintiff's claim were submitted.

From his consideration of the testimony, the deputy concluded that plaintiff had not established his right to compensation under the statute and an order denying the award sought was entered. The appeal board reversed the order on the ground that plaintiff's disability resulted "from causes and conditions characteristic of and peculiar to the business of the employer." An award was accordingly made under part 7 of the compensation act on the ground that the disability was suffered under such circumstances as to bring it fairly within the scope of part 7, § 1, of the act as amended by PA 1943, No 245 (CL 1948, § 417.1 [Stat Ann 1950 Rev § 17.-220]). From such award defendants, on leave granted, have appealed. In consequence the case is now before us for review on writ of certiorari, the issue being whether the testimony before the deputy was sufficient to support the finding of the board.

The record discloses that immediately prior to the time that plaintiff suffered the hemorrhage he and other employees of defendant Penegor were preparing a load of logs on a trailer for hauling. In connection with such work it was customary to bind the load with chains, one near the front and the other at the rear of such load. The driver who was to take out the load affixed the front chain, and plaintiff proceeded to secure the load toward the rear. The proc-

---

* PA 1912 (1st Ex Sess), No 10, as amended (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1950 Rev § 17.141 *et seq.*, as amended]).

ess involved the attaching of a chain to the right side of the trailer, throwing the loose end over the load so that it could be reached from the opposite side, and then pulling down the chain to a point where it might be attached to binding mechanism on the left side. This involved hooking the chain in position and then tightening it by means of a handle, or lever, on the binder. If the chain was sufficiently tight the mechanism automatically locked as the handle was pressed down into position. The testimony indicates that the operation was one that required physical exertion and skill.

The inference follows from the testimony of the witnesses that the binding operation was more difficult in some instances than in others. If unusually difficult a pipe was employed for the purpose of facilitating the operation, or assistance was rendered by a fellow employee. In the case at bar it does not appear that plaintiff experienced any difficulty in securing the load in the manner indicated. He was at the time 26 years of age, was experienced in the work, and physically strong. He did not undertake to procure a pipe to use, nor did he seek help from any other employee. That such help was available to him if he needed it, because of difficulty in the operation, clearly appears from the record. One of his fellow employees, Neilo Maki, testified that he watched plaintiff while the latter was engaged in fastening the load binder, that he observed that plaintiff had the chain hooked, concluded that no help was required, and started to walk away. Afterwards, on inspection, he discovered that plaintiff had completed the operation.

Testimony was offered indicating that in order to reach the end of the chain that had been thrown over the load plaintiff stepped up on the wheel of the trailer, 2 or 2-1/2 feet above the ground. The record does not show whether he stepped down after reach-

ing the chain or remained standing on the wheel while hooking the chain and manipulating the handle of the binder. Apparently as he walked away from the trailer no one observed his actions. However, after he had gone a few feet he made an exclamation that attracted the attention of his fellow workmen, and then fell to the ground. He was taken to a hospital at Ontonagon for medical attention. A physician who examined him, and who testified in his behalf on the hearing, diagnosed his trouble as a subarachnoid hemorrhage, concluding also that plaintiff had at the time of the occurrence an aneurysm, described as a weak and distended blood vessel. The witness further testified that such a condition may be congenital or may be the result of disease. He did not undertake to express any opinion as to the length of time that such condition had existed, nor is there any proof as to the nature of the disease, progressive or otherwise, that might cause an aneurysm in the brain. The witness specifically stated as his opinion that plaintiff suffered his disability because the aneurysm ruptured and caused the hemorrhage.

Counsel for plaintiff have called attention to prior decisions of this Court in which awards of compensation under part 7 were sustained on the ground that proofs were offered to show that the disabilities for which compensation was sought actually resulted from causes or conditions characteristic of and peculiar to the business of the employer. Such was the situation in *Mills* v. *Detroit Tuberculosis Sanitarium,* 323 Mich 200. There the proofs on behalf of plaintiff indicated that he contracted tuberculosis as the result of washing dishes regularly in defendant sanitarium, which dishes had been used by patients afflicted with the ailment. In *Underwood* v. *National Motor Castings Division, Campbell, Wyant & Cannon Foundry Company,* 329 Mich 273, plain-

tiff's work required her to bend and twist in the handling of heavy cores in a foundry, resulting in a lumbosacral strain with some evidence indicating a herniated disc. Under the proofs offered, it appeared that plaintiff's condition developed, as in the *Mills Case,* from the work that she was required to do and its manner of performance. Comparable situations existed in *Fields* v. *G. M. Brass & Aluminum Foundry Company,* 332 Mich 113, and *Gibbs* v. *Motor Wheel Corporation,* 333 Mich 617.

In the case at bar there is no claim that the aneurysm that resulted in the hemorrhage was caused by characteristics of the employment. Insofar as the right to compensation under part 7 of the statute is concerned, the claim rests wholly on the theory that the weakened blood vessel ruptured because of physical exertion on plaintiff's part in securing the load in the manner indicated. The testimony of the medical witness, above mentioned, indicated that "strenuous physical activity" may result in raising blood pressure, and further stated as his opinion that if one takes a bent or cramped position of such nature as to constrict the liver additional blood may be forced into the peripheral circulation. In the instant case there is no proof that plaintiff was in a cramped position while hooking the chains and manipulating the lever on the binder, nor may it be said that the testimony here supports a conclusion, insofar as plaintiff was concerned, that there was strenuous activity on his part. He knew how to perform the task and apparently went about it in a methodical way. It does not appear that he had any difficulty in hooking the chains or in pressing down the lever on the binder. As before noted, the testimony indicates what would necessarily follow as an inference, that on some occasions the securing of a load of logs involved more difficulty than in others. We may not conclude, however, from the

proofs before us here that plaintiff found the task particularly difficult on the occasion in question. Apparently he did not find it necessary to use a pipe or to seek available assistance from his fellow employee. Neither does it appear that the operation was other than brief.

On behalf of appellants it is insisted that the decision of this Court in *McGregor* v. *Conservation Department,* 338 Mich 93, is significant. There, as here, the award of compensation to the plaintiff was based on part 7 of the compensation act. There, as here, plaintiff had a pre-existing condition, in that case arteriosclerosis of a coronary vessel. He was employed as a fire warden, and at times his ordinary duties were somewhat strenuous. This Court, while recognizing the fact that plaintiff's duties involved hard physical labor, denied compensation. In reaching such conclusion *Hagopian* v. *City of Highland Park,* 313 Mich 608, was cited in support of the proposition that plaintiff's disability was not due to "causes and conditions characteristic of and peculiar to the business of the employer." For like reasons the award of the appeal board in the case at bar may not be sustained under part 7 of the statute.

A situation somewhat analogous to that in the instant case was presented in *Carter* v. *International Detrola Corporation,* 328 Mich 367. There plaintiff was employed by defendant in work involving the inspection of mine detector units. In performing her duties she was required to exert muscular effort and suffered difficulty in using her arms. Apparently the period during which she was engaged in the occupation began in February, 1944, after the workmen's compensation law was amended by PA 1943, No 245. Her difficulty was finally diagnosed as hypertrophy of the scalenus anticus muscle which pressed on the cords of the brachial plexus, compressing the axillary artery and causing circulatory disturbance and

pain. The condition, which resulted from a pre-existing variation in muscle position and use of the muscle, was finally relieved by an operation. The compensation commission entered an award in plaintiff's favor, which this Court reversed. In reaching the conclusion indicated, it was said, in part (pp 369, 370):

"Plaintiff's disability did not result from an accidental injury or fortuitous event. If compensable at all it must be as a 'disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer.' CL 1948, § 417.1 (Stat Ann 1949 Cum Supp § 17.220).

"Plaintiff did manual work which required the continuous use of her arms. In this respect it was no different than many other factory jobs. The resulting excessive movement of the scalenus anticus muscle is not so unique as to be 'characteristic of and peculiar to the business of the employer.' Muscle use is common to most other employments, and the act does not permit compensation for injuries caused by this alone. See *Bederin* v. *Ex-Cell-O Corporation*, 311 Mich 334; and *Hagopian* v. *City of Highland Park*, 313 Mich 608."

This brings us to the question whether the award should be upheld on the theory that plaintiff is entitled thereto under part 2 of the compensation law. The appeal board declined to base an award thereon. The proceeding is before us on writ of certiorari and, as before stated, the question is whether there was testimony supporting the conclusion of the appeal board that plaintiff was entitled to an award under part 7. However, and without reference to this phase of the situation, I cannot agree that under the circumstances plaintiff was entitled to an award under part 2. Any such claim involves an interpretation of the amendments to the compensation law made by PA 1943, No 245. This has been a repeated matter

of consideration and discussion by this Court. For the reasons set forth in *Hagopian* v. *City of Highland Park, supra; Arnold* v. *Ogle Construction Co.*, 333 Mich 652, and other decisions in accord therewith, the claim that the amendments made to the statute by the act of 1943 broadened the scope of part 2 of the compensation law is not well founded. In other words, the legislature did not so change part 2 of the act as to render nonaccidental injuries compensable thereunder.

A repetition of what has been said on prior occasions would serve no useful purpose. It is significant to note, however, that the act of 1943 amended section 1 of part 7 of the statute, hereinbefore cited. Prior to such amendment part 7 related to occupational diseases as defined by the legislature in PA 1937, No 61. The amendment enlarged its scope to include disabilities arising out of and in the course of the employment and due to causes and conditions characteristic of and peculiar to the business of the employer. If at the same time the legislature, as it is now claimed, changed the statute so as to make compensable under part 2 all injuries whether accidental or otherwise arising out of and in the course of the employment, why was it deemed necessary to amend section 1 of part 7 in the manner indicated? Under the specific language used, "disability" is included in "personal injury." Bearing in mind that we are concerned here with the matter of statutory interpretation, we must of necessity give due consideration to all portions of the act tending to throw light on the matter of legislative intent. As declared in *Smith* v. *Wilson Foundry & Machine Co.*, 296 Mich 484, 487, the statute "must be construed and administered according to its terms, * * * and its scope may not be enlarged beyond the terms of its enactment."

The case should be remanded to the appeal board with directions to set aside the award.

SHARPE, J., concurred with CARR, J.

EDWARDS, J. (*concurring*).    Plaintiff suffered a stroke occasioned by a brain hemorrhage while seeking to chain a load of logs in place on his truck.

After hearing the incident and the effort concerned therewith related, plaintiff's medical witness testified concerning "such physical exertion," "It is my opinion that it can produce this hemorrhage." The workmen's compensation appeal board found that his injury arose out of and during the course of his employment, and there is ample evidence from which such a finding could be made.

Plaintiff filed claim for compensation alleging disability, alternatively based on "personal injury" and "occupational disease."    The opinion of the appeal board granting compensation was likewise alternative:

"We find that plaintiff fastened a load binder requiring very great and strenuous effort immediately prior to falling in an unconscious state on February 17, 1953.    Plaintiff's injury may have been caused by this single incident.    Under all of the circumstances pertaining to plaintiff's work and the injury sustained, it is our finding that it is immaterial whether the injury resulted from the regular course of strenuous and unusual exertion described herein or whether, while regularly engaged in such work, plaintiff was injured as the result of a single incident.    In either event the injury is compensable in view of Michigan Supreme Court decisions covering each type of case.

"There is clear authority for the proposition that where an employee is regularly performing unusual and very strenuous work but an injury is due to a particular or single event although no accident or

fortuitous circumstance is involved, the injury is compensable. *Anderson* v. *General Motors Corporation,* 313 Mich 630; *Schinderle* v. *Ford Motor Company,* 316 Mich 387. It is also true that a disability is compensable which results from regular and customary work of an unusual and strenuous nature although no accidental injury, fortuitous event or single incident is involved."

This brain hemorrhage was not an ordinary disease of life. It resulted from the rupture of a small blood vessel (perhaps previously weakened) in the covering of the brain, due to hard physical exertion in the course of employment.

No proof of "accidental" injury is required under the statute as amended in 1943 and following, for the reasons cited in my opinion in *Sheppard* v. *Michigan National Bank,* 348 Mich 577.

Language of this Court in some previous cases[*] implying or holding that a requirement of proof of "accident" arises where there is evidence of a preexisting ailment or injury is hereby overruled for the reason that no such requirement may be found in the act and for the compelling additional reasoning on this question of Mr. Justice SMITH's opinion in *Sheppard* v. *Michigan National Bank, supra,* decided this date.

The injury and subsequent disability were related causally to a single event. The writer believes that recovery should be allowed under the factual situation related above under part 2 of the act.

The compensation award would be the same under part 2 as under part 7. For the reasons stated, I concur with Mr. Justice BLACK in affirming the award.

---

[*] Notably: *Hagopian* v. *City of Highland Park,* 313 Mich 608, 625 (and subsequent case quotations therefrom); *Arnold* v. *Ogle Construction Co.,* 333 Mich 652, 664; *Nichols* v. *Central Crate & Box Co.,* 340 Mich 232, 234, 235; *Croff* v. *Lakey Foundry & Machine Co.,* 320 Mich 581, 585; *Wieda* v. *American Box Board Co.,* 343 Mich 182, 189; *McGregor* v. *Conservation Department,* 338 Mich 93, 101.

SMITH, J. (*concurring*). This opinion must be read in connection with our addendum to *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 603, also decided this date.

Having in *Sheppard* purged ourselves of error with respect to our judge-invented, long-insisted-upon requirement of fortuitous injury, a majority of our Court now abandons another of our judicially created sources of doubt, confusion, and error, the differentiation (as respects the requirement of accidental injury) between the workman who had a physical defect pre-existing the injury and him who did not.

Ewart Coombe was injured while doing his ordinary work in his ordinary way. The causal connection is clear and the injury undisputed. The act authorizes compensation to him and it has been awarded. The legislative intent has been accomplished. At long last, nothing more need be said.

Affirmed. Costs to appellee.

BLACK, J., concurred with SMITH, J.

KELLY, J. (*concurring*). The award of compensation should be affirmed under part 2 of the workmen's compensation act for the reasons I set forth in my opinion in *Sheppard* v. *Michigan National Bank,* 348 Mich 577, 633. Costs to appellee.

VOELKER, J., took no part in the decision of this case.